UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | § | |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ENRON CORP., et al.,<br><br>Defendants. | § | Civil Action No. H-01-3624<br>**(Consolidated)** |
| This Document Relates to:<br><br>SILVERCREEK MANAGEMENT, INC., et al.<br><br>Plaintiffs,<br>vs.<br><br>CITIGROUP, INC., et al.<br><br>Defendants. | § | Civil Action No. H-03-0815<br>(**Coordinated)** |

**CREDIT SUISSE'S SEPARATE MEMORANDUM IN SUPPORT OF THE FINANCIAL INSTITUTIONS' JOINT MOTION TO DISMISS THE SILVERCREEK PLAINTIFFS' THIRD AMENDED COMPLAINT (DOCKET NO. 121)**

**Table of Contents**

Table of Contents ........ i

Table of Authorities ........ ii

Citation Conventions ........ v

Statement of Facts ........ 1

Argument ........ 2

I. The Silvercreek Plaintiffs' Section 11 Claim Should Be Dismissed Because They Fail Adequately To Plead that Credit Suisse Was a Statutory Underwriter of the Zero Notes. ........ 2

II. The Silvercreek Plaintiffs' New Section 12(a)(2) Claim Should Be Dismissed Because The Statute of Repose Has Lapsed and Because the Silvercreek Plaintiffs' Allegations Fail To State a Claim. ........ 7

A. The Silvercreek Plaintiffs' New Section 12(a)(2) Claim Is Barred by the Statute of Repose ........ 7

B. The Silvercreek Plaintiffs Fail Adequately To Plead Their Section 12(a)(2) Claim, Which Sounds in Fraud, with the Requisite Particularity ........ 10

Conclusion ........ 11

**Table of Authorities**

**Page(s)**

**Cases**

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)....................8

*Archer v. Nissan Motor Acceptance Corp.*,
550 F.3d 506 (5th Cir. 2008)....................8

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*,
419 F.3d 355 (5th Cir. 2005)....................7, 10

*Fischler v. AmSouth Bancorporation*,
971 F. Supp. 533 (M.D. Fla. 1997)....................9

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*,
770 F. Supp. 2d 618 (S.D.N.Y. 2011)....................9

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.*,
615 F. Supp. 2d 1018 (N.D. Cal. 2009)....................9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
Civ. A. No. H-04-0088, 2005 WL 3704688 (S.D. Tex. Dec. 5, 2005)....................4

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.* (*Silvercreek I*),
Nos. MDL 1446, Civ. A. H-01-3624, Civ. A. H-02-3185,
2003 WL 23305555 (S.D. Tex. Dec. 11, 2003)....................3

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.* (*Lamkin*),
Nos. MDL 1446, Civ. A. H-01-3624, Civ. A. H-02-3913,
Civ. A. No. H-02-0851, Civ. A. No. H-02-851,
2003 U.S. Dist. LEXIS 25037 (S.D. Tex. Nov. 13, 2003)....................3

*In re Indymac Mortg.-Backed Sec. Litig.*,
No. 09 Civ. 4583(LAK), 2011 WL 2508254 (S.D.N.Y. June 21, 2011)....................8

*In re Lehman Bros. Sec. & ERISA Litig.*,
681 F. Supp. 2d 495 (S.D.N.Y. 2010)....................3

*In re Lehman Bros. Sec. & ERISA Litig.*,
No. 09 MC 2017(LAK), 2011 WL 3211364 (S.D.N.Y. July 27, 2011)....................9, 10

*In re Refco, Inc. Sec. Litig.*,
No. 05 Civ. 8626(GEL), 2008 WL 3843343 (S.D.N.Y. Aug. 14, 2008)....................3

*In re Worldcom, Inc. Sec. Litig. (Alameda Cnty. Emps.' Ret. Ass'n v. Ebbers),*
308 F. Supp. 2d 338 (S.D.N.Y. 2004)....................5

*In re Worldcom, Inc. Sec. Litig.,*
346 F. Supp. 2d 628 (S.D.N.Y. 2004)....................4

*Irwin v. Dep't of Veterans Affairs,*
498 U.S. 89 (1990)....................9

*Joseph v. Wiles,*
223 F.3d 1155 (10th Cir. 2000) ....................9

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
501 U.S. 350 (1991)....................8

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
597 F.3d 84 (2d Cir. 2010)....................7

*Maine State Ret. Sys. v. Countrywide Fin. Corp.,*
722 F. Supp. 2d 1157 (C.D. Cal. 2010) ....................9

*Margolies v. Deason,*
464 F.3d 547 (5th Cir. 2006) ....................7

*McFarland v. Memorex Corp.,*
493 F. Supp. 631 (N.D. Cal. 1980) ....................4

*Neuwirth Inv. Fund, Ltd. v. Swanton,*
422 F. Supp. 1187 (S.D.N.Y. 1975)....................6

*P. Stolz Family P'ship L.P. v. Daum,*
355 F.3d 92 (2d Cir. 2004)....................8, 10

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.,*
714 F. Supp. 2d 475 (S.D.N.Y. 2010)....................3

*Rombach v. Chang,*
355 F.3d 164 (2d Cir. 2004)....................11

*S.E.C. v. N. Am. Research & Dev. Corp.,*
280 F. Supp. 106 (S.D.N.Y. 1968), *rev'd on other grounds*,
424 F.2d 63 (2d Cir. 1970)....................3

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.,*
413 F.3d 553 (6th Cir. 2005) ....................9

*Young v. United States,*
535 U.S. 43 (2002)....................9

**Statutes & Rules**

Section 2 of the Securities Act of 1933, 15 U.S.C. § 77b....................................................2

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k...................................... *passim*

Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l....................................... *passim*

Section 13 of the Securities Act of 1933, 15 U.S.C. § 77m..................................... *passim*

Rules Enabling Act, 28 U.S.C. § 2072(a), (b) ..............................................................9, 10

Fed. R. Civ. P. 9(b) ..........................................................................................................10

Fed. R. Civ. P. 15(c) ........................................................................................................10

Fed. R. Civ. P. 23..............................................................................................................9

**Other Authorities**

17 C.F.R. § 229.508(a), (e) .........................................................................................5, 6

H.R. Rep. No. 85, 73d Cong., 1st Sess. 5 (1933)..................................................................4

## Citation Conventions

### Entities

"Financial Institutions": Defendants JPMorgan Chase & Co., J.P. Morgan Securities Inc. (n/k/a J.P. Morgan Securities LLC), Merrill Lynch & Co., Inc., Deutsche Bank Alex. Brown Inc., Deutsche Bank AG (n/k/a/ Deutsche Bank Securities Inc.), Barclays Capital Inc., Barclays plc, Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation)

"Barclays": Barclays Capital Inc. and Barclays plc

"Credit Suisse": Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation)

"Deutsche Bank": Deutsche Bank Alex. Brown Inc. (n/k/a/ Deutsche Bank Securities Inc.) and Deutsche Bank AG

"JPMorgan": JPMorgan Chase & Co. and J.P. Morgan Securities Inc. (n/k/a J.P. Morgan Securities LLC)

"Merrill Lynch": Merrill Lynch & Co., Inc.

"Silvercreek Plaintiffs": Silvercreek Management, Inc., Silvercreek Limited Partnership, Silvercreek II Limited, OIP Limited, and the Pebble Limited Partnership

### Pleadings and Court Submissions

"TAC": Third Amended Complaint, dated August 11, 2011 (Docket No. 121)

"Joint Mem.": The Financial Institutions' Joint Memorandum of Law in Support of Their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint (Docket No. 121)

"Volker Decl. Ex.": Exhibit to the Declaration of Odean L. Volker in Support of the Financial Institutions' Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint

Credit Suisse respectfully submits this supplemental memorandum in further support of the Financial Institutions' joint motion to dismiss the Silvercreek Plaintiffs' Third Amended Complaint. Credit Suisse writes separately to address unique issues regarding Credit Suisse as to the Section 11 claim and to address the new Section 12(a)(2) claim against it. The arguments set forth herein, together with the arguments set forth in the Financial Institutions' Joint Memorandum of Law, dispose of all of the Silvercreek Plaintiffs' claims asserted against Credit Suisse and support the dismissal with prejudice of the Third Amended Complaint against Credit Suisse in its entirety.

**Statement of Facts**[1]

Between October 18 and October 26, 2001, as Enron was collapsing, the Silvercreek Plaintiffs invested about $21.8 million in Enron's Zero Coupon Notes (the "Zero Notes"). (TAC ¶¶ 159, 165; TAC Ex. A at 1.) The Silvercreek Plaintiffs allege that the offering documents for the Zero Notes contained false and misleading statements. The Third Amended Complaint alleges that Credit Suisse acquired Zero Notes from the initial underwriters, JPMorgan, Barclays and Deutsche Bank, in the initial private placement. (TAC ¶ 149.) It alleges further that Credit Suisse, along with a long list of other institutions, acquired the Zero Notes with the purpose of reselling them to the public in the later public offering. (TAC ¶ 152.) The Registration Statement referred to these institutions, including Credit Suisse, as "selling securityholders". (TAC ¶¶ 666, 671.) The Zero Notes Registration Statement incorporated Enron's subsequently-restated SEC filings. (TAC ¶ 668.) The Silvercreek Plaintiffs allege that the offering documents

[1] This factual summary relates only to the Section 11 and Section 12(a)(2) claims asserted against Credit Suisse. The complete factual recitation is set forth in the Joint Memorandum of Law.

were materially misleading with respect to Enron's financial condition and the nature of Credit Suisse's relationship with Enron. (TAC ¶¶ 665, 671-672.) The Silvercreek Plaintiffs allege that they relied on the Registration Statement, the Offering Memorandum, the Prospectus and the financial statements incorporated therein in purchasing the Zero Notes. (TAC ¶ 161.) Thus, they assert a claim against Credit Suisse under Section 11, *see* 15 U.S.C. § 77k, and now, nine years after their initial complaint (and after a recent change in counsel), the Silvercreek Plaintiffs also assert a claim against Credit Suisse, under Section 12(a)(2) of the Securities Act of 1933, *see* 15 U.S.C. § 77*l*.

## Argument

### I. THE SILVERCREEK PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED BECAUSE THEY FAIL ADEQUATELY TO PLEAD THAT CREDIT SUISSE WAS A STATUTORY UNDERWRITER OF THE ZERO NOTES.

The Silvercreek Plaintiffs' Section 11 claim against Credit Suisse fails because they do not allege facts sufficient to show that Credit Suisse fits the definition of an underwriter of the Zero Notes pursuant to Section 2 of the Securities Act. Section 2 of the Securities Act defines an underwriter as:

> "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking." 15 U.S.C. § 77b(a)(11).

Here, the Silvercreek Plaintiffs do not adequately allege that Credit Suisse qualifies as a statutory underwriter of the Zero Notes.

*First*, the Silvercreek Plaintiffs do not allege that Credit Suisse purchased the Zero Notes *from an issuer*. Several courts have held that the term "participation" in

Section 2 refers to participation in purchasing securities from the issuer—the "'participation' in question . . . is participation in the 'undertaking' referred to immediately before [in Section 2]: *that of purchasing securities from an issuer* with a view to their resale—that is, the underwriting of a securities offering as commonly understood." *See Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 482 (S.D.N.Y. 2010) (emphasis added) (quoting *In re Lehman Bros. Sec. & ERISA Litig.*, 681 F. Supp. 2d 495, 499 (S.D.N.Y. 2010) (quoting *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626(GEL), 2008 WL 3843343, at *4 (S.D.N.Y. Aug. 14, 2008))). The "purchase from an 'issuer', or a control person, is a necessary element in the underwriter definition". *See S.E.C. v. N. Am. Research & Dev. Corp.*, 280 F. Supp. 106, 122 (S.D.N.Y. 1968), *rev'd on other grounds*, 424 F.2d 63 (2d Cir. 1970). Here, the Silvercreek Plaintiffs do not allege that Credit Suisse purchased the Zero Notes "from an issuer"—in this case, Enron. Rather, they allege that Credit Suisse purchased the notes from the initial underwriters, JPMorgan, Deutsche Bank and Barclays. (TAC ¶ 149.) This is insufficient to state a claim against Credit Suisse under Section 11.[2]

*Second*, the Silvercreek Plaintiffs do not allege that Credit Suisse actually participated in the preparation of the Registration Statement for the Zero Notes. The

[2] This case is distinguishable from the Court's decision in *Lamkin*, which was cited by the Court as the basis for and incorporated into the Court's opinion in *Silvercreek I*. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.* (*Silvercreek I*), Nos. MDL 1446, Civ. A. H-01-3624, Civ. A. H-02-3185, 2003 WL 23305555, *13 n.19 (S.D. Tex. Dec. 11, 2003). In *Lamkin*, the Court found that plaintiffs adequately alleged that UBS PaineWebber was the "exclusive broker" for the Enron employee stock options, that Enron exercised "tight control over UBS" and that PaineWebber was "subservient" to Enron. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.* (*Lamkin*), Nos. MDL 1446, Civ. A. H-01-3624, Civ. A. H-02-3913, Civ. A. No. H-02-0851, Civ. A. No. H-02-851, 2003 U.S. Dist. LEXIS 25037, *33, *44 (S.D. Tex. Nov. 13, 2003). The Silvercreek Plaintiffs make no such allegations regarding Credit Suisse's relationship with Enron.

purpose of Section 11 is to render those entities "responsible for" the disclosures contained in a registration statement liable for any material misstatements contained therein. H.R. Rep. No. 85, 73d Cong., 1st Sess. 5 (1933) ("[T]he essential characteristic [underlying the imposition of Section 11 liability] consists of a requirement that all those responsible for statements upon the face of which the public is solicited to invest its money shall be held to standards like those imposed by law upon a fiduciary"); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 646 (N.D. Cal. 1980) ("[T]hose who have control over the statements made in a registration statement are made liable for false statements or omissions"); *cf. In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, Civ. A. No. H-04-0088, 2005 WL 3704688, at *16 (S.D. Tex. Dec. 5, 2005) (in passing Section 11, "Congress imposed a stringent standard of liability on underwriters and others playing a direct role in a registered offering to 'provide the necessary incentive to ensure their careful investigation of the offering' to protect investors by making the underwriters responsible for the truth of the registration statement and prospectus" (quoting *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 657 (S.D.N.Y. 2004))). Here, the Silvercreek Plaintiffs have not alleged that Credit Suisse had any role in preparing the Registration Statement for the Zero Notes, or otherwise had any control over the statements in the Registration Statement. *See, e.g.*, *McFarland*, 493 F. Supp. at 646-647 (dismissing Section 11 claim because there was no allegation that the defendants had control over the registration statement). They allege only that Credit Suisse supposedly had a right to participate in the preparation of the Registration Statement and was given access to Enron's books and records. (TAC ¶ 146.) The failure to plead any

direct role in the preparation of the Registration Statement is fatal to their Section 11 claim.

*Third*, the Silvercreek Plaintiffs do not allege that Credit Suisse performed any underwriting activities with respect to the Zero Notes offering. Whether a party is a statutory underwriter depends not on "the particular person's general business but on the basis of his relationship to the particular offering". *In re Worldcom, Inc. Sec. Litig. (Alameda Cnty. Emps.' Ret. Ass'n v. Ebbers)*, 308 F. Supp. 2d 338, 344 (S.D.N.Y. 2004) (emphasis omitted). "Given this statutory emphasis on an entity's 'participation' in the underwriting, courts have determined whether a defendant was an underwriter by analyzing its role in the underwriting process." *Id.* The Silvercreek Plaintiffs do not allege that Credit Suisse's conduct carried any of the hallmarks of an underwriter with respect to the Zero Notes offering.

The Third Amended Complaint does not allege, for example, that Credit Suisse received any commission for its purported "underwriting" services other than its potential profit on any resale of the Zero Notes, which is the same potential profit any investor who purchases and later sells any security would receive. The Registration Statement itself does not suggest that Credit Suisse—or any of the dozens of selling securityholders identified therein—was involved in the offering in any capacity other than that of an institutional investor who purchased notes in the private placement for investment-related reasons.[3] (*See* July 2001 Registration Statement, Volker Decl. Ex. 1.)

[3] If Credit Suisse or other selling securityholders had been considered an underwriter for this offering, the Registration Statement would have contained a "table that sets out the nature of the compensation and the amount of discounts and commissions to be paid to the underwriter for each security and in total" as required by 17 C.F.R. § 229.508(e).

Rather, it indicates only that "[t]he selling securityholders may offer and sell, from time to time, any or all of their notes or common stock issued upon conversion of those notes". (*Id.* at 43.) This statement is not suggestive of an entity that has been retained to facilitate the public distribution of securities on behalf of an issuer. Federal regulations require the registration statement to "[s]tate briefly the nature of the obligation of the underwriter(s) to take the securities". 17 C.F.R. § 229.508(a). Here, there is no "obligation" on Credit Suisse "to take securities"; the securities already had been "taken" by the initial underwriters in a private offering exempt from the Securities Act. The examples of "obligations" in the Regulation are whether the underwriter must take and pay for all the securities or whether the arrangement with the underwriter is a "best efforts" arrangement. *Id.* That these categories do not apply to Credit Suisse's purchase of securities in the private offering is further indication that Credit Suisse is not an underwriter of the Zero Notes.

For each of these reasons, Credit Suisse as a matter of law cannot be held liable as an underwriter of the Zero Notes under Section 11.[4]

---

The Registration Statement for the Zero Notes contained no such table listing Credit Suisse. (*See* July 2001 Registration Statement, Volker Decl. Ex. 1.)

[4] The fact that Credit Suisse is included with many others on a list of selling securityholders in the Registration Statement and that the Registration Statement states generically that selling securityholders "*may* be deemed to be" underwriters under the Securities Act (*see* TAC ¶ 666 (emphasis added)) is not determinative. *See Neuwirth Inv. Fund, Ltd. v. Swanton*, 422 F. Supp. 1187, 1196 (S.D.N.Y. 1975) (the "mere fact" that the share certificates indicated that the "holder 'may be deemed to be an underwriter of such shares within the provisions and for purposes only of the Securities Act of 1933' should not be dispositive. The regulative scheme of the Securities Act would fall into disarray if parties to transactions could themselves specify how or when the Act was to be applied").

## II. THE SILVERCREEK PLAINTIFFS' NEW SECTION 12(A)(2) CLAIM SHOULD BE DISMISSED BECAUSE THE STATUTE OF REPOSE HAS LAPSED AND BECAUSE THE SILVERCREEK PLAINTIFFS' ALLEGATIONS FAIL TO STATE A CLAIM.

### A. The Silvercreek Plaintiffs' New Section 12(a)(2) Claim Is Barred by the Statute of Repose.

The Silvercreek Plaintiffs' Section 12(a)(2) claim based on their alleged purchases in October 2001 of the Zero Notes from Credit Suisse was extinguished in October 2004, when the Securities Act's three-year statute of repose expired. *See* Section 13 of the Securities Act, 15 U.S.C. § 77m ("*In no event* shall any such action be brought to enforce a liability created . . . under [Section 12(a)(2)] of this title more than three years after the sale [of the security]." (emphasis added)). The statute of repose operates as an absolute bar to the Section 12(a)(2) cause of action here; it represents a substantive right of Credit Suisse that cannot be abridged by notions of equity. Unlike statutes of limitations, which are affirmative defenses subject to tolling (and waiver), statutes of repose by operation of law extinguish a plaintiff's cause of action upon expiration. *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 88 n.4 (2d Cir. 2010); *Margolies v. Deason*, 464 F.3d 547, 551 (5th Cir. 2006) ("Statutes of limitation speak to matters of remedy, whereas statutes of repose eliminate the underlying rights when they lapse."). The statute of repose "'*creates a substantive right* to be free of liability after a legislatively determined period' . . . [it] establishes a 'right not to be sued,' rather than a 'right to sue'". *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 363 (5th Cir. 2005) (emphasis added) (holding that a federal statute's discovery rule does not preempt state statute of repose).

The Silvercreek Plaintiffs cannot avail themselves of any equitable tolling or relation back doctrine to resuscitate this claim that was extinguished under the statute

of repose. *See, e.g., Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (holding that federal statute with language that "[n]o action shall be brought later than two years from the date of the occurrence of the violation" was "a statute of repose establishing with clear text a 'jurisdictional bar' under which 'federal courts lack the power to extend the period to allow for late adjudication of claims []'" which "expired before they were brought" and "foreclosed equitable doctrines" (footnotes omitted)).

*First*, equitable tolling is unavailable. Rather, statutes of repose "run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004). Section 13 of the Securities Act is, by its terms, clear and inflexible: "[i]n no event" may a Section 12(a)(2) claim be brought "more than three years after the sale". 15 U.S.C. § 77m. "[T]he legislative bar to subsequent action is *absolute*, subject to legislatively created exceptions . . . set forth in the statute of repose." *P. Stolz Family P'ship*, 355 F.3d at 102-03 (emphasis added) (quotation omitted). As a result, many courts have held that equitable tolling, including the class action tolling doctrine established in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), does not apply to extend the statute of repose in the Securities Act. *E.g., Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362, 363 (1991) (the Securities Act's and the Exchange Act's "1-and-3-year structure" operates as a statute of

limitations/statute of repose and the "3-year limit is a period of repose inconsistent with tolling").[5]

In any event, even if *American Pipe* class action tolling were applicable (it is not), the Silvercreek Plaintiffs are not entitled to invoke it. *American Pipe* tolling has no application to plaintiffs who institute independent actions before class certification is resolved. *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 568 (6th Cir. 2005). The Silvercreek Plaintiffs brought this lawsuit (without any Section 12 claim) on November 7, 2002, well before class certification in *Newby* was granted by this Court on July 5, 2006.

---

[5] *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MC 2017(LAK), 2011 WL 3211364, at *34 (S.D.N.Y. July 27, 2011) ("this Court is persuaded that neither *American Pipe nor any other form of tolling* may be invoked to avoid the three year statute of repose set forth in Section 13 of the Securities Act of 1933" (emphasis added)); *In re Indymac Mortg.-Backed Sec. Litig.*, No. 09 Civ. 4583(LAK), 2011 WL 2508254, at *2 (S.D.N.Y. June 21, 2011) (same); *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 624-25 (S.D.N.Y. 2011) (same); see also *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1035 (N.D. Cal. 2009) (statute of repose under the Securities Exchange Act of 1934 may not be tolled); *Fischler v. AmSouth Bancorporation*, 971 F. Supp. 533, 536-37 (M.D. Fla. 1997) (same).

A few courts have incorrectly held that *American Pipe* tolling does apply to the statute of repose, based on a notion that *American Pipe* tolling is "legal" or "statutory" tolling, not equitable tolling. *See Joseph v. Wiles*, 223 F.3d 1155, 1166-67 (10th Cir. 2000) (holding that tolling under *American Pipe* is legal or statutory, not equitable, and thus applies to the statute of repose); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010) (same). These cases do not address the strict nature of the statute of repose and do not acknowledge decisions of the Supreme Court following *American Pipe* that characterize *American Pipe* tolling as equitable. *See Young v. United States*, 535 U.S. 43, 49 (2002); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 & n.3 (1990). The holding of *Wiles* and similar cases also conflicts with the plain language of Section 13. There is no basis to conclude that tolling pursuant to Rule 23 principles could overcome an explicit statutory bar; such a result would violate the Rules Enabling Act, 28 U.S.C. § 2072(b): "[General rules of practice and procedure] shall not abridge, enlarge or modify any substantive right". *See Footbridge*, 770 F. Supp. 2d at 626.

*Second*, for similar reasons, the Silvercreek Plaintiffs cannot invoke the Rule 15(c) principle of relation back to resuscitate claims extinguished by Section 13's statute of repose: "plaintiffs . . . cannot avoid the statute of repose on a 'relation back' theory under [Rule] 15(c) because the statute of repose by its terms allows no exceptions." *In re Lehman Bros.*, 2011 WL 3211364, at *34. Allowing Rule 15(c) relation back to revive a claim extinguished by the statute of repose would also violate the Rules Enabling Act, 28 U.S.C. § 2072(b). That is because the statute of repose is a substantive right of the defendant. *See Burlington Northern*, 419 F.3d at 363. The Rules Enabling Act disallows "general rules of practice and procedure" promulgated by the Supreme Court to "abridge, enlarge or modify any substantive right". 28 U.S.C. § 2072(a), (b). *See In re Lehman*, 2011 WL 3211364, at *34.

The Silvercreek Plaintiffs' putative Section 12(a)(2) claim was extinguished by statute of repose long ago; any injury allegedly suffered is now a "wrong for which the law provides no redress". *P. Stolz*, 355 F.3d at 103 (quotations omitted). Accordingly, their Section 12(a)(2) claim must be dismissed.[6]

**B. The Silvercreek Plaintiffs Fail Adequately To Plead Their Section 12(a)(2) Claim, Which Sounds in Fraud, with the Requisite Particularity.**

Even if the Silvercreek Plaintiffs' Section 12(a)(2) claim were not barred by the statute of repose (and it is), it still must be dismissed because the Silvercreek Plaintiffs fail to satisfy the particularity requirements of Rule 9(b). Section 12(a)(2)

[6] The Silvercreek Plaintiffs also cannot rely on the Court's stay of proceedings to claim tolling of the statute of repose. The statute of repose cannot be tolled, and cannot be modified by judicial litigation stays. In any event, tolling would not be appropriate here because the Silvercreek Plaintiffs had ample opportunity to bring this claim within the three-year period but failed to do so.

claims, like Section 11 claims, are subject to Rule 9(b) pleading standards when the allegations in the complaint sound in fraud. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (holding that Rule 9(b)'s heightened pleading standard applies to claims under Section 12(a)(2) when those claims are premised on allegations of fraud); (*see also* Joint Mem. Part V). Thus, for the same reasons discussed in the Financial Institutions' Joint Memorandum of Law, the Silvercreek Plaintiffs fail to plead their Section 12(a)(2) claim with the requisite particularity because they do not allege specific facts that support an inference that Credit Suisse made fraudulent misstatements or omissions with respect to the Registration Statement for the Zero Notes. (*See* Joint Mem. Part V.)

**Conclusion**

For the reasons stated above and set forth in the Financial Institutions' Joint Memorandum of Law, the Silvercreek Plaintiffs' Third Amended Complaint should be dismissed as to Credit Suisse in its entirety, with prejudice.

Dated: September 27, 2011

Respectfully submitted,

By:_______________________________

Lawrence D. Finder
Texas Bar No. 07007200
Odean L. Volker
Texas Bar No. 20607715
HAYNES AND BOONE, LLP
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600

Richard W. Clary
Julie A. North
Darin P. McAtee
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

ATTORNEYS FOR DEFENDANTS CREDIT SUISSE FIRST BOSTON (USA), INC. (N/K/A CREDIT SUISSE (USA), INC.), CREDIT SUISSE FIRST BOSTON LLC (N/K/A CREDIT SUISSE SECURITIES (USA) LLC) AND PERSHING LLC (F/K/A DONALDSON, LUFKIN & JENRETTE SECURITIES CORP.)

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 27, 2011, a copy of the foregoing instrument was served on the attorneys of record for all parties to the above cause through the CM/ECF System.

/s/ Odean L. Volker

Odean L. Volker