UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | |
| IN RE ENRON CORPORATION SECURITIES, DERIVATIVE AND "ERISA" LITIGATION | : : | MDL 1446 |
| ------------------------------------------------------------ x | | |
| MARK NEWBY, et al., | : | |
|        Plaintiffs, | : : | Civil Action No. H-01-3624 and consolidated and coordinated cases |
| v. | : : | |
| ENRON CORP., et al., | : | |
|        Defendants. | : | |
| ------------------------------------------------------------ x | | |
| SILVERCREEK MANAGEMENT INC., et al., | : : | |
|        Plaintiffs, | : : | Civil Action No. H-03-0815 |
| v. | : : | |
| CITIGROUP, INC., et al., | : : | |
|        Defendants. | : x | |
| ------------------------------------------------------------ | | |

**JPMORGAN CHASE'S SUPPLEMENTAL MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT (Instr. No. 121)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

    A.    JPMorgan Chase Did Not Become An Underwriter Of The Public Offering Of Zero Coupon Notes As A Result Of JPMSI's Role As Initial Purchaser In The Private Placement ......................................................................... 5

    B.    Plaintiffs Fail To Allege Facts Tracing Their Securities To An Offering For Which JPMorgan Chase Was An Underwriter ................................................. 7

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. High-Income Trust v. AlliedSignal*, 329 F. Supp. 2d 534 (S.D.N.Y. 2004)..........................5, 6

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)...........................................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................................................4

*Finkel v. Stratton Corp.*, 962 F.2d 169 (2d Cir. 1992) .....................................................................8

*Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437 (N.D. Cal. 1990)................................8

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008).........................9

*In re Countrywide Fin. Corp. Sec. Litig.*, No. CV-07-05295-MRP (MANx), 2009 WL 943271 (C.D. Cal. April 6, 2009)........................................................................................8

*In re Enron Corp. Sec., Derivative and "ERISA Litig.,"* 258 F. Supp. 2d 576 (S.D. Tex. 2003)...............................................................................................................................5

*In re Enron Corp. Sec., Derivative and "ERISA" Litig.*, 439 F. Supp. 2d 692 (S.D. Tex. 2006)...............................................................................................................................2

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007).................................................4

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001).......................5, 6

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ............................................5, 6

*In re Safety-Kleen Corp. Bondholders Litig.*, No. 3:00-1145-17, 2002 WL 32795850 (D.S.C. Sept. 9, 2002).................................................................................................5

*Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005)............................................................4, 5

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002).........................................................4

## Statutes

15 U.S.C. § 77e(a) ............................................................................................................................2

15 U.S.C. § 77k(d)............................................................................................................................8

## Regulations

17 C.F.R. § 229.512(a)(2)................................................................................................................8

Defendants JPMorgan Chase & Co. and J.P. Morgan Securities Inc. (n/k/a J.P. Morgan Securities LLC) ("JPMSI") (collectively, "JPMorgan Chase") respectfully submits this supplemental memorandum of law in support of its motion to dismiss Plaintiffs' Third Amended Complaint (Instr. No. 121).

## PRELIMINARY STATEMENT

Plaintiffs in this action allege that JPMorgan Chase, as well as other Financial Institution Defendants, are liable under Section 11 of the Securities Act of 1933 (the "Section 11 Claim") for losses incurred in connection with Plaintiffs' purchases in late October 2001 of certain Zero Coupon Exchangeable Notes issued by Enron earlier that year (the "Zero Coupon Notes" or the "Notes").[1] In addition to the reasons set forth in the The Financial Institutions' Joint Memorandum of Law in Support of their Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint, Plaintiffs' Section 11 Claim cannot succeed against JPMorgan Chase because, as a threshold matter, Plaintiffs have failed to plead that the Zero Coupon Notes are traceable to a registered public offering for which JP Morgan Chase was an underwriter. Without such a pleading, Plaintiffs lack standing to bring a Section 11 Claim against JPMorgan Chase. For this reason alone, Count Six of the Third Amended Complaint (the "Complaint") should be dismissed as to JPMorgan Chase.

---

[1] Plaintiffs also allege the following claims against JPMorgan Chase: (i) aiding and abetting fraud; (ii) conspiracy to commit fraud; (iii) aiding and abetting negligent misrepresentation; and (iv) violations of the Texas Securities Act, all of which should be dismissed for the reasons set forth in The Financial Institutions' Joint Memorandum.

## STATEMENT OF FACTS[2]

The Complaint alleges that the Zero Coupon Notes were issued in a multi-step process beginning in early-February 2001.  Compl. ¶ 143, 149.  First, on February 7, 2001, Enron sold $1.9 billion in Zero Coupon Notes to various qualified institutional purchasers, including JPMSI and certain other Financial Institution Defendants, in a 144A private placement exempt from registration under the Securities Act.  Compl. ¶ 149; Enron Corp., Prospectus, Zero Coupon Convertible Senior Notes Due 2021 (Form 424(b)(3)), at 43 (July 25, 2001) ("Final Prospectus," attached as Ex. A to the Declaration of Jonathan K. Youngwood).  Pursuant to applicable securities laws, the initial purchasers in the private placement could then resell the Zero Coupon Notes to other qualified institutional investors, but not to the general public.  *Id.* As a second step, Enron commenced the public offering of the Zero Coupon Notes by filing a preliminary registration statement and preliminary prospectus with the Securities and Exchange Commission on June 1, 2001.  Compl. ¶ 150.  On July 25, 2001, after Enron filed the final prospectus and the registration statement became effective, certain institutional purchasers of the Zero Coupon Notes in the private placement became eligible to sell their Notes to the public (the "July 25 Public Offering").  *Id.*; *see* 15 U.S.C. § 77e(a) (it is unlawful for any person to sell a security "[u]nless a registration statement is *in effect* as to [such] security . . . .) (emphasis added).

---

[2]  "Although generally a court may not rely on materials outside the pleadings in a Rule 12 review, in securities fraud suits the court may also consider documents attached to or incorporated by reference in the complaint, and materials of public record subject to judicial notice, including 'the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC.'" *In re Enron Corp. Sec., Derivative and "ERISA" Litig.*, 439 F. Supp. 2d 692, 696 (S.D. Tex. 2006) (citation omitted).

Notably, however, not all of the institutional purchasers of the Zero Coupon Notes were eligible to sell the Notes to the public as of July 25, 2001.  Instead, institutional purchasers of the Zero Coupon Notes were required to be identified as "selling securityholders" in the Final Prospectus or in a later filed supplement in order to sell their Notes to the public under the prospectus.  *See* Ex. A, Final Prospectus, at 29. The Final Prospectus included a table listing those institutional purchasers who were eligible to sell their Notes to the public in connection with the July 25 Public Offering.  *Id*. at 43-45.  An institutional purchaser not included in this table could not sell its Zero Coupon Notes to the public until it "ha[d] notified [Enron] and a supplement to [the] prospectus ha[d] been filed or an amendment to the related registration statement ha[d] become effective." *Id*. at 43.

JPMSI was not listed as a selling securityholder in the Final Prospectus and, as of July 25, 2001, was not eligible to sell the Zero Coupon Notes to the public.  *Id*. at 44-45.  In fact, it was not until August 3, 2001 – nine days after the July 25, 2001 Public Offering – that Enron filed a supplement to the Final Prospectus which included JPMSI as a selling securityholder of the Zero Coupon Notes (the "August 3 Public Offering").  *See* Enron Corp., Prospectus Supplement No. 1, Zero Coupon Convertible Senior Notes Due 2021 (Form 424(b)(3)), at 1 (Aug. 3, 2001) ("August 3 Supplement," attached as Ex. B to the Declaration of Jonathan K. Youngwood).

Although Plaintiffs make conclusory allegations that Defendants (including JPMorgan Chase) "served as underwriters of the Zero Notes offering within the meaning of . . . the Securities Act," Compl. ¶ 881, they plead no facts whatsoever demonstrating that their Zero Coupon Notes were purchased in connection with a registered public offering for which JPMorgan Chase served as an underwriter.  Instead, the Complaint states only that Plaintiff

3

Pebble Limited Partnership "purchased Zero Notes on October 19 through 24, 2001" and that Plaintiff Silvercreek Limited Partnership "purchased Zero Notes on October 19 through 26, 2011." Compl. ¶ 159. Plaintiffs provide no allegations at all that trace their purchases of the Zero Coupon Notes to an offering underwritten by JPMorgan Chase.[3]

## ARGUMENT

To survive a motion to dismiss on the basis of Rule 12(b)(6), a plaintiff "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). Courts do not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

Because "Section 11's liability provisions are expansive," its standing provision is "narrow." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005).  As a result, this Court has held that only purchasers of securities who trace their securities to a particular misleading

---

[3] To the extent Plaintiffs Pebble Limited Partnership and Silvercreek Limited Partnerships were qualified institutional investors during the relevant time period, it is also possible that their purchases of the Zero Coupon Notes are traceable solely to the 144A private placement and not to any public offering registered under the Securities Act.

4

registration statement have standing to sue under Section 11 of the Securities Act.  *See In re Enron Corp. Sec., Derivative and "ERISA Litig.,"* 258 F. Supp. 2d 576, 648 n.77 (S.D. Tex. 2003) ("The Court holds that after-market securities purchasers who can trace the purchase of their stock to a misleading registration statement (*i.e.*, make a *prima facie* showing that their stock was issued under that defective registration statement) have standing to sue under § 11 even if they did not purchase their shares in the initial or secondary offering.").  *See also In re Enron Corp. Sec., Derivative and "ERISA" Litig.*, 540 F. Supp. 2d 759, 785, n.30 (S.D. Tex. 2007) ("Standing under Section 11 is limited to 'any person acquiring such security' under the materially misleading registration statement or to those aftermarket purchasers able to 'trace' the security back to the misleading registration statement at issue (restricting standing to a 'subset of security owners')." (quoting *Krim*, 402 F.3d at 494-97)).

A.  **JPMorgan Chase Did Not Become An Underwriter Of The Public Offering Of Zero Coupon Notes As A Result Of JPMSI's Role As Initial Purchaser In The Private Placement**

It is well established that Plaintiffs cannot base their Section 11 claim against JPMorgan Chase on JPMSI's role ***in a private offering exempt from the Securities Act***.  *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 431-32 (S.D.N.Y. 2001); *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 628 (S.D.N.Y. 2007) (finding that a "Rule 144A offering and the subsequent public offering will not be treated as one integrated transaction for purposes of § 11" (citing *Livent*, 151 F. Supp. 2d at 431-32)); *Am. High-Income Trust v. AlliedSignal*, 329 F. Supp. 2d 534, 541 (S.D.N.Y. 2004) (finding that initial purchasers in private offerings are not liable as underwriters in subsequent public offerings); *In re Safety-Kleen Corp. Bondholders Litig.*, No. 3:00-1145-17, 2002 WL 32795850, at *3 (D.S.C. Sept. 9, 2002) (finding

that initial purchasers in private offerings are not liable as underwriters in subsequent public offerings).[4]

In the oft-cited case *In re Livent, Inc. Noteholders Sec. Litig.*, plaintiff noteholders argued that initial purchasers in connection with 144A offerings should be held liable as underwriters for alleged misrepresentations in a registration statement for the contemplated subsequent exchange and resale of registered notes. 151 F. Supp. 2d at 431-32. Defendants countered that they were not underwriters pursuant to Section 11 because, in their role as initial purchasers, they purchased private notes from the company and resold to Qualified Institutional Purchasers in a private placement exempt from the Securities Act. Reasoning that the capital market financing objectives of Rule 144A would be frustrated by imposing underwriting liability on initial purchasers, the Court found that initial purchasers are not subject to Section 11 liability for their role in the private offerings. *Id.* at 432.

Like the defendants in the *Livent* case, on February 7, 2001, JPMSI participated in Enron's Rule 144A private placement offering of the Zero Coupon Notes as a qualified institutional purchaser. This offering was not registered under the Securities Act and, as such, cannot be the basis for Section 11 liability. *See Livent*, 151 F. Supp. 2d at 432; *Refco*, 503 F. Supp. 2d at 628; *Am. High-Income*, 329 F. Supp. 2d at 541. Although Plaintiffs plead that the private placement "explicitly contemplated a subsequent, second stage public offering of the same Notes within a few months," they acknowledge that the public offering did not begin until June 1, 2001 and that prior to that date, in accordance with Rule 144A, the initial purchasers

---

[4] Rule 144A offerings often are followed by registered offerings in which issuers exchange the private notes of institutional purchasers with registered notes that could be sold publicly. *Id.* at 431.

(including JPMSI) only resold the Notes to other qualified institutional purchasers. Compl. at ¶ 149. Accordingly, based on the allegations in the Complaint, there is no basis by which to impose Section 11 liability on JPMorgan Chase in connection with its role as an initial purchaser in the private placement.

### B.   Plaintiffs Fail To Allege Facts Tracing Their Securities To An Offering For Which JPMorgan Chase Was An Underwriter

Plaintiffs also claim, using bald legal conclusions, that selling securityholders of the registered Zero Coupon Notes "would be 'subject to certain of the civil liability provisions under the Securities Act . . .' and 'may be deemed to be underwriters within the meaning of the Securities Act.'"  Compl. ¶ 153.  Even assuming *arguendo* that selling securityholders automatically bear Section 11 liability—which JPMorgan Chase disputes[5]—Plaintiffs' Section 11 Claim must fail because Plaintiffs did not, as they must, trace their Zero Coupon Notes to an offering for which JPMorgan Chase was an underwriter.

Even though the Zero Coupon Notes were registered and offered to the public on July 25, 2001, JPMSI, unequivocally, was not an underwriter of the Notes at that time.  As required pursuant to the Final Prospectus, JPMSI was not listed as a selling securityholder—and thus did not become an underwriter of the Notes—until Enron filed its August 3, 2001 Supplement to the Registration Statement.  Where, as here, a financial institution "[became] an underwriter with respect to the security after the part of the registration statement with respect to

---

[5]   Separate and apart from the issue of traceability, for the reasons described in Point II of the Memorandum of Law in Support of Deutsche Bank's Motion To Dismiss Plaintiff's Third Amended Complaint, which are hereby incorporated by reference, Plaintiffs fail to plead facts sufficient to demonstrate that JPMorgan Chase was an underwriter for purposes of Section 11 liability.  Indeed, like Deutsche Bank, there are no specific factual allegations that JPMorgan Chase participated in the preparation of the registration statement.

7

which [the financial institution's] liability is asserted [became] effective," "such part of the registration statement shall be considered as having become effective with respect to [that financial institution] as of the time when [it] became an underwriter." 15 U.S.C. § 77k(d); *see also In re Countrywide Fin. Corp. Sec. Litig.*, No. CV-07-05295-MRP (MANx), 2009 WL 943271, at *6 (C.D. Cal. April 6, 2009) (explaining that "[p]re–Rule 430B timing law did not distinguish among any actors *except for underwriters*, whose liability at that time was governed solely by § 11(d) [15 U.S.C. § 77k(d)] (creating a special timing rule for underwriters)") (emphasis added). The allegedly misleading registration statement on which Plaintiffs base their Section 11 claim is therefore not effective **as to JPMorgan Chase** until August 3, 2001. Accordingly, JPMSI was not a selling securityholder, and thus could not have been an underwriter, until the August 3 Public Offering, which is distinct from the July 25 Public Offering.

Case law supports the fact that amendments to registration statements are treated as distinct offerings with regard to a plaintiff's requirement to trace securities to an allegedly misleading registration statement. For instance, the Court in *Guenther v. Cooper Life Sciences, Inc*. faced the issue of how to treat a post-effective amendment in the context of Section 11's tracing requirement, and found that plaintiffs may bring Section 11 claims only on the basis of a post-effective amendment if they can trace their securities back to the "offering" in connection with that specific amendment. 759 F. Supp. 1437, 1440-41 (N.D. Cal. 1990). Citing to 17 C.F.R. § 229.512(a)(2), the court reasoned that the securities sold in connection with an allegedly defective post-effective amendment constituted an offering separate from the offering prior to the amendment. *Guenther,* 759 F. Supp. at 1439-41; *see also Finkel v. Stratton Corp*., 962 F.2d 169, 174 (2d Cir. 1992) (explaining that "§ 229.512(a)(2), operating in the context of securities

8

offered pursuant to the post-effective registration, deems the offering date to be the post-effective registration date, not the initial registration date" (citing *Guenther*, 759 F. Supp. at 1440–41)); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1165 (C.D. Cal. 2008) (citing § 229.512(a)(2) and explaining that an amended registration statement, for purposes of Section 11 liability, "only creates a new claim for the purchasers that can trace their security to the registration statement *as amended*" (citing *Guenther*, 759 F. Supp. at 1439–41)) (emphasis added). That logic applies with equal force here, thus requiring Plaintiffs to trace their Zero Coupon Notes to the August 3 Public Offering, or a subsequent one for which JPMorgan Chase was an underwriter. Plaintiffs fail to make any such showing and, as such, their Section 11 Claim against JPMorgan Chase should be dismissed.

## CONCLUSION

For the reasons set forth above, as well as the reasons set forth in The Financial Institutions' Joint Memorandum of Law in Support of their Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint, Plaintiffs' Section 11 Claim should be dismissed as to Defendant JPMorgan Chase.

By: /s/ Richard W. Mithoff
Richard W. Mithoff
Attorney-in-Charge
Texas Bar No. 14228500
S.D. Tex. Bar No. 2102
MITHOFF LAW FIRM
One Allen Center, Penthouse
500 Dallas Street
Houston, TX 77002
Telephone: (713) 654-1122
Facsimile: (713) 739-8085

OF COUNSEL:
Thomas C. Rice
David J. Woll
Jonathan K. Youngwood
SIMPSON THACHER &
BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Charles A. Gall
Texas Bar No. 07281500
James W. Bowen
Texas Bar No. 02723305
HUNTON & WILLIAMS LLP
1445 Ross Ave., Suite 3700
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

ATTORNEYS FOR DEFENDANTS
JPMORGAN CHASE & CO. AND J.P.
MORGAN SECURITIES INC. (N/K/A
J.P. MORGAN SECURITIES LLC)

## CERTIFICATE OF SERVICE

      The undersigned certifies that on September 27, 2011, a copy of the foregoing instrument was served on the attorneys of record for all parties to the above cause through the CM/ECF System.

                                                                      /s/ Steven M. Metro
                                                                         Steven M. Metro