UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION | MDL Docket No. 1446 |
| MARK NEWBY, et al., Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v. ENRON CORP., et al., Defendants. | Civil Action No. H-01-3624 (Consolidated, Coordinated and Related Cases) |
| This Document Relates To: Silvercreek Management Inc.; Silvercreek Limited Partnership; Silvercreek II Limited; OIP Limited; And Pebble Limited Partnership, Plaintiffs, v. Citigroup, Inc., et al., Defendants. | Civil Action No. H-03-0815 |

**THE BARCLAYS DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (INSTR. # 121)**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ............................................................................................................................3

    A.    The Zero Coupon Notes Offering ................................................................3

    B.    Silvercreek's Allegations Against Barclays .................................................5

ARGUMENT ..................................................................................................................................6

I.    SILVERCREEK'S SECURITIES ACT CLAIMS ................................................6

AGAINST BARCLAYS SHOULD BE DISMISSED. ........................................................6

    A.    The Notes Offering Was a Private Placement That Is Not Subject to Section 11. ........................................................................................6

    B.    The Registration Statements Make Clear That Barclays Did Not Underwrite the Notes. ..................................................................................7

II.    SILVERCREEK'S TEXAS SECURITIES ACT CLAIM AGAINST BARCLAYS SHOULD BE DISMISSED. ............................................................11

CONCLUSION ............................................................................................................................14

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Am. High-Income Trust v. AlliedSignal*,
   329 F. Supp. 2d 534 (S.D.N.Y. 2004)..................................................................9

*Anegada Master Fund, Ltd.* v. *PXRE Group Ltd.*,
   680 F. Supp. 2d 616 (S.D.N.Y. 2010)..................................................................6

*Crescendo Invs., Inc.* v. *Brice*,
   61 S.W.3d 465 (Tex. App. 2001).........................................................................13

*Gustafson* v. *Alloyd Co.*,
   513 U.S. 561 (1995)..............................................................................................7

*Herman & MacLean* v. *Huddleston*,
   459 U.S. 375 (1983)......................................................................................... 7-8

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   235 F. Supp. 2d 549 (S.D. Tex. 2002) ................................................................12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   258 F. Supp. 2d 576 (S.D. Tex. 2003) ..................................................................7

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   540 F. Supp. 2d 759 (S.D. Tex. 2007) ..................................................................4

*In re Itel Sec. Litig.*,
   89 F.R.D. 104 (N.D. Cal. 1981).........................................................................11

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)..................................................................9

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007)..................................................................9

*In re Refco, Inc. Sec. Litig.*,
   No. 05 Civ. 8626 (GEL), 2008 U.S. Dist. LEXIS 62543
   (S.D.N.Y. Aug. 14, 2008) ................................................................................ 8-9

*In re Sec. Litig. BMC Software, Inc.*,
   183 F. Supp. 2d 860 (S.D. Tex. 2001) ..................................................................4

# TABLE OF AUTHORITIES
(*continued*)

### Cases
(*continued*)

**Page(s)**

*Lane Hartman Ltd.* v. *P.R.O. Missions, Inc.*,
    No. Civ. A. 3:95-CV-0869-P, 1997 U.S. Dist. LEXIS 23068
    (N.D. Tex. Aug. 5, 1997) ...................................................................................12

*Regents of the University of California* v. *Credit Suisse First Boston (USA), Inc.*,
    482 F.3d 372 (5th Cir. 2007) ..................................................................................2

*Stoneridge Invesment Partners, LLC* v. *Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ................................................................................................2

### STATUTES, RULES AND REGULATIONS

17 C.F.R. § 230.144A ................................................................................. 3, 7-8

15 U.S.C. § 77b ..........................................................................................................8

15 U.S.C. § 77k ......................................................................................................6, 11

FED. R. CIV. P. 12(b)(6) ...........................................................................................1

### OTHER AUTHORITIES

H.R. Rep. No. 73-85 (1933) .....................................................................................9

### THE BARCLAYS DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (INSTR. # 121)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Barclays PLC and Barclays Capital Inc. (collectively, "Barclays") respectfully submit this separate memorandum in support of their motion to dismiss Plaintiffs' Third Amended Complaint, dated August 11, 2011 (Instr. # 121) (the "Complaint").[1]  Barclays also moves to dismiss the Complaint on all the grounds set forth in the Financial Institutions' Joint Memorandum of Law in Support of Their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint (the "Joint Memorandum"), and joins that memorandum.  Barclays submits this separate memorandum to point out that Silvercreek's claims against Barclays should be dismissed for the additional reason that, as the documents referred to in the Complaint make clear, Barclays had no role whatsoever in underwriting the Enron notes that Silvercreek purchased.

### Preliminary Statement

The Silvercreek Plaintiffs are a group of professional investors who took a high-risk gamble in late October 2001 by repeatedly purchasing Enron debt securities *after* Enron began its well-publicized descent into financial distress.  This litigation is Silvercreek's attempt to recover on that failed bet.

Silvercreek asserted in its prior complaints a number of federal and state-law claims against Barclays.  Those claims were premised on the same theory that was

---

[1] Plaintiffs are Silvercreek Management, Inc., Silvercreek Limited Partnership, Silvercreek II Limited, Onex Industrial Partners, Limited ("OIP") and Pebble Limited Partnership, and are referred to herein collectively as "Silvercreek" or the "Silvercreek Plaintiffs."

rejected as a basis for Section 10(b) liability in *Newby*: that Barclays (and other financial institutions) "helped" Enron inflate its earnings and conceal debt by participating in arm's-length structured finance transactions. After *Regents of the University of California* v. *Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372 (5th Cir. 2007) and *Stoneridge Investment Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) rejected so-called "scheme liability" against "secondary actors" in securities fraud cases, Silvercreek sought to re-characterize this action as an underwriting case. Thus, Silvercreek's counsel represented to this Court that its suit asserts "primarily" claims brought under Section 11 of the Securities Act of 1933 (the "Securities Act"). (*See* Exhibit A to the Declaration of Joshua Fritsch in Support of the Motion of the Barclays Defendants to Dismiss the Third Amended Complaint, dated September 27, 2011 ("Fritsch Decl.") at 26-27.)

Wholly aside from the potential merits (or lack thereof) of Silvercreek's claims against other defendants, these claims plainly do not apply to Barclays because Barclays did not underwrite the Enron notes that are the subject of this action. Silvercreek concedes that Barclays did not sell it any Enron notes, but asserts that Barclays is nevertheless liable because Silvercreek purchased certain notes, called "Zero Coupon Notes," that Barclays allegedly purchased in a private placement. It is undisputed, however, that Barclays had no role in that note offering. Thus, in addition to the reasons set forth in the Joint Memorandum, Silvercreek's claims against Barclays are meritless for the following three additional reasons.

*First*, Barclays cannot be held liable under the Securities Act on account of its alleged involvement in the initial issuance of the unregistered Zero Coupon Notes

because this issuance was a private placement pursuant to Rule 144A. As this Court has recognized, private placements of unregistered securities under Rule 144A do not trigger liability under Section 11 of the Securities Act.

*Second*, Barclays cannot be held liable as an underwriter for the registered securities that were eventually offered because—as the Zero Coupon Notes offering documents make clear—Barclays had no role whatsoever in the sale of the Zero Coupon Notes to the public. Under its plain terms, Section 11 applies to "underwriters"—*i.e.*, those that are involved in the purchase and sale of registered securities. Because Barclays did not participate in any such purchase or sale, it cannot be held liable as an underwriter of the Notes.

*Third*, even if Texas law applied to this action—and it does not—Silvercreek's Texas Securities Act claim should be dismissed because Barclays had no role in the public offering of the Zero Coupon Notes Silvercreek purchased. Barclays' alleged participation in the initial private offering of the Zero Coupon Notes is insufficient to render Barclays liable under the Texas Securities Act.

## BACKGROUND

**A.     The Zero Coupon Notes Offering[2]**

On February 7, 2001, Enron issued the "Zero Coupon Notes" (the "Notes") in a private placement pursuant to 17 C.F.R. § 230.144A ("Rule 144A"),

---

[2]     There is one other debt offering at issue in this action, a 7% Exchangeable Note Offering, which is not referenced in this brief because Silvercreek does not allege that Barclays underwrote those notes.

promulgated under the Securities Act.  (*See* Compl. ¶ 143; Fritsch Decl., Ex. B at 1.)[3] The initial purchasers of the Notes were certain financial institutions who simultaneously sold the Notes to qualified institutional buyers as defined in Rule 144A.  (Compl. ¶ 146; Fritsch Decl., Ex. B at 1, 43.)  Subject to satisfying certain conditions, some of the initial purchasers, described as "selling securityholders," were permitted (but not required) to sell the Notes to the public according to a "Plan of Distribution."  (Compl. ¶ 149; Fritsch Decl., Ex. B at 43-47.)  Barclays is *not* identified as an underwriter or "selling securityholder" in the registration statements, prospectus or prospectus supplements.  (*See* Fritsch Decl., Ex. B at 44-45; Fritsch Decl., Ex. C at 40-41; Fritsch Decl., Ex. D at 43-46; Fritsch Decl., Exs. E-H.)

In fact, although the fact is unnecessary for the Court to grant this motion, Barclays was not even an initial purchaser in the private placement.  (*See* Fritsch Decl., Ex. I at 13-14.)  Rather, although Barclays *agreed* to purchase some of the Notes in the initial private placement, it ultimately *did not* purchase, sell or resell *any* of the Notes.

---

[3] Because Plaintiffs specifically allege reliance on the Zero Coupon Note prospectuses, offering memorandum and registration statement (¶ 161), the Court may consider them on a motion to dismiss.  *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 786 n.32 (S.D. Tex. 2007) (taking judicial notice of "SEC-filed registration statements"); *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001) (a court may consider documents "integral to and explicitly relied on in the complaint," as well as the full text of documents that are partially quoted or referred to in the complaint).

### B. Silvercreek's Allegations Against Barclays

Silvercreek's claims against Barclays rest on the theory that Barclays underwrote the Notes and yet "never disclosed the material facts concerning Enron's off-balance sheet obligations or the false revenue, profits and cash flow being reported by Enron." (Compl. ¶ 332.) Silvercreek allegedly "relied on" these alleged misstatements in making their decisions to purchase the Notes. (Compl. ¶¶ 336-37.) Silvercreek's claims against Barclays are based on conclusory allegations concerning Barclays' alleged knowledge of Enron's fraud or role in the transactions at issue. (*See* Compl. ¶¶ 330-40.) According to Silvercreek, Barclays' alleged participation in certain, arm's-length structured finance transactions with Enron gave Barclays reason to know "that the offering memorandum, registration statement and prospectus for the Enron Zero Notes were materially false and misleading, and that the investing public would be deceived thereby." (Compl. ¶ 331.)

Silvercreek's conclusory allegations suffer from a threshold flaw: Barclays was *not* an underwriter of the Notes and did not purchase, sell or resell the Notes. As demonstrated by the registration and offering materials to which Silvercreek cites (*see* Compl. ¶ 164a), Barclays had absolutely no role in underwriting the Notes. And because Barclays was not an underwriter of the Notes, Silvercreek's claims against Barclays should be dismissed with prejudice.

# ARGUMENT

## I. SILVERCREEK'S SECURITIES ACT CLAIMS AGAINST BARCLAYS SHOULD BE DISMISSED.

Section 11 of the Securities Act provides a cause of action against any signer, officer of the issuer or "underwriter" for a *registration statement* that "contain[s] an untrue statement of material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k. Because Silvercreek can only allege that Barclays participated in the *private* and *unregistered* sale of the Notes rather than the registered offerings, there is no basis to hold Barclays liable under Silvercreek's Section 11 underwriting and derivative Section 15 control person claims.[4]

### A. The Notes Offering Was a Private Placement That Is Not Subject to Section 11.

Silvercreek's Section 11 claims against Barclays are largely premised on its allegations that the initial offering memorandum for the private placement "was materially false, fraudulent and misleading." (Compl. ¶ 338.) But this is legally irrelevant, because the initial Notes offering was a private placement under Rule 144A. (*See* Fritsch Ex. Decl., Ex. B at 1, 43.)

---

[4] Because Silvercreek has no Section 11 claim, its derivative Section 15 control person claim (Compl. ¶ 890) also should be dismissed. *See Anegada Master Fund, Ltd.* v. *PXRE Group Ltd.*, 680 F. Supp. 2d 616, 624 (S.D.N.Y. 2010) (dismissing Section 15 claim when plaintiffs failed to plead a primary violation under Section 12 of the Securities Act).

Rule 144A provides an express exemption from the usual requirement that a registration statement be filed in connection with an offering of securities. *See* 17 § 230.144A(b), (c). This Court has held that "there can be no § 11 liability in connection with a Rule 144A private placement because a private placement is not made pursuant to a registration statement." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 258 F. Supp. 2d 576, 619 (S.D. Tex. 2003); *see also Gustafson* v. *Alloyd Co.*, 513 U.S. 561, 577-78 (1995) (noting that a "registration statement" is only relevant to purchases made in connection with a *public* offering). Because no registration statement was filed in connection with the initial issuance of the Notes, and the existence of "[a] registration statement is an essential element of a § 11 claim," Silvercreek cannot allege that it relied upon any misstatements of material fact or omissions contained therein for the purposes of establishing Section 11 liability. *Enron*, 258 F. Supp. 2d at 619.

### B. The Registration Statements Make Clear That Barclays Did Not Underwrite the Notes.

Silvercreek's Section 11 claim also fails for the independent reason that Barclays had no actionable role with respect to the registered Notes offering. To allege a Section 11 claim, a plaintiff must show that a defendant is within the class of persons who can be held liable under the statute: "the issuer, its directors or partners, underwriters, and accountants who are named as having prepared or certified the

registration statement." *Herman & MacLean*, 459 U.S. 375, 382 n.13 (1982). Barclays is not within any of these classes.[5]

Although the Complaint alleges in conclusory fashion that Barclays underwrote the Notes offering (Compl. ¶¶ 5, 15, 77, 332, 336-37), Barclays was not an underwriter as that term is defined in the Securities Act. Section 2(a)(11) of the Securities Act provides:

> The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the *distribution of any security*, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking[.]

15 U.S.C. § 77b(a)(11) (emphasis added).

This definition makes clear that only underwriters in the usual sense of that word—*i.e.*, those entities that "distribut[e]" a security—are liable under Section 11. As a result, the "general judicial understanding" on the scope of underwriting liability requires distribution of securities to the public:

> The definition of "underwriter" is intended to sweep up all—*but only*—those who play a role in the *distribution* of the securities . . . . [W]hile the definition is indeed broad, underwriter is not . . . a term of unlimited applicability that includes anyone associated with a given transaction. Indeed, the Eighth Circuit has held that "[t]he congressional intent in defining "underwriter" was to cover all persons who might operate *as conduits* for the *transfer* of securities to the public." Similarly, other courts have recognized that it is "crucial to the definition of "underwriter" that any underwriter must participate in the distribution of a security."

---

[5]   Of course, because the private offering complied with the requirements of Rule 144A, Barclays is not a statutory "underwriter" for the private placement under the terms of the Securities Act. *See* 17 C.F.R. § 230.144A(7)(b).

*In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (GEL), 2008 U.S. Dist. LEXIS 62543, at *14 (S.D.N.Y. Aug. 14, 2008) (emphasis added) (citations omitted).  *See also* H.R. Rep. No. 73-85, at 13-14 (1933) (noting that the definition of "underwriter" in the 1933 Act is intended to encompass traditional underwriters and "those who perform functions similar in character").

Because "distribution" of *registered* securities is required for a party to be an "underwriter," Section 11 liability cannot attach to a defendant that was involved only in the private placement stage of a "two-step" offering when that defendant does not distribute the publicly offered securities.  For example, in *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001), the court held that a defendant that was "heavily involved" in a private placement "as [an] initial purchaser[] who essentially orchestrated the subsequent sale of the unregistered securities" was not "liable as underwriter[] of the sale of registered securities" because it was not directly involved in the subsequent exchange of unregistered securities for registered securities.  *Id*. at 401, 432; *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 628 (S.D.N.Y. 2007) (following *Livent* in dismissing claims arising from a 144A private placement); *Am. High-Income Trust v. AlliedSignal*, 329 F. Supp. 2d 534, 541 (S.D.N.Y. 2004) (finding that initial purchasers in private offerings are not liable as underwriters in subsequent public offerings).  The same result is required here, because Barclays' role is even more limited than in *Livent*.

Although Silvercreek alleges in conclusory form that Barclays "underwrote" the Notes offering (¶¶ 5, 15, 77, 332, 336-37), the very documents to which Silvercreek refers clearly demonstrate that Barclays was *not* an "underwriter" of the

-9-

Notes.  *None* of the Notes' offering documents identify Barclays as an underwriter of the publicly issued Notes.  (*See* Fritsch Decl., Ex. B at 44-45; Fritsch Decl., Ex. C at 40-41; Fritsch Decl., Ex. D at 43-46; Fritsch Decl., Exs. E-H.)  As a result, Barclays neither created nor controlled the statements in those documents, nor did it have any role with respect to the registered offering.

Silvercreek attempts to manufacture Section 11 liability by claiming that Barclays "purchased the Zero Notes with a view to the distribution of those securities and [was an] underwriter[]." (Compl. ¶ 153.)  Putting aside the fact that Barclays did not purchase *any* of the Notes in the private placement (*see* Fritsch Decl., Ex. I at 13-14), the registration statement explicitly distinguishes between the (non-actionable) private placement purchasers and the selling securityholders who, subject to satisfying certain conditions, were permitted (but not required) to distribute the notes to potential investors:

> All of the notes, and any shares of our common stock issued upon conversion of the notes, are being offered by the ***selling securityholders listed in the table below*** or referred to in a prospectus supplement.  We issued and sold the notes in a private placement to [various entities including] Barclays Capital Inc., and the notes were simultaneously sold by [those entities] to the selling security holders in transactions exempt from registration under the Securities Act.

(Fritsch Decl., Ex. C at 40 (emphasis added).)

Barclays is not listed on the table identifying the selling securityholders, and was not identified in any prospectus supplements or other offering documents as a

selling securityholder (*see* Fritsch Decl., Exs. B-H).[6] Because Barclays was not a selling securityholder, it cannot be liable as an underwriter under Section 11.[7]

## II. SILVERCREEK'S TEXAS SECURITIES ACT CLAIM AGAINST BARCLAYS SHOULD BE DISMISSED.

Even assuming Texas law applies here—and it does not (*see* Joint Memorandum at 7-8, 18)—Silvercreek cannot state a claim under the Texas Securities Act against Barclays. Silvercreek alleges that Barclays is liable as an aider and abettor under the Texas Securities Act because it "directly and/or indirectly with intent to deceive, defraud, and/or with reckless disregard for the truth or the law materially aided Enron . . . in connection with the second stage public offering of the Zero Notes." (Compl. ¶ 923.) However, as noted above, Barclays had no role whatsoever in the public, "second stage" offering of the Notes.

---

[6] As set forth in other memoranda of law in support of the financial institutions' motions to dismiss, Barclays notes that a financial institution is not liable as an underwriter under Section 11 simply because it was identified as a selling securityholder in an offering document.

[7] The flaw in Silvercreek's claims against Barclays is further demonstrated by Section 11(e)(3) of the Securities Act. That provision states that an underwriter can only be liable for "damages in excess of the total price at which the securities underwritten by [it] and distributed to the public were offered to the public." 15 U.S.C. § 77k(e). Because Barclays was not involved in the registered offering pursuant to which securities were "distributed to the public," it cannot be responsible for any of Silvercreek's alleged damages. *See*, *e.g.*, *In re Itel Sec. Litig.*, 89 F.R.D. 104, 116 (N.D. Cal. 1981) (pursuant to Section 11(e) "each individual underwriter can only be required to pay out damages up to the amount of the total price at which the securities underwritten by him and distributed by him to the public were offered to the public").

Implicitly conceding that Barclays did not provide any assistance to Enron in the public offering, Silvercreek alleges that Barclays should be liable because it "sold Zero Notes in the stage one private placement knowing that the Zeros were about to be registered for resale in the stage two public offering, thereby obtaining a much better price than if the offering was solely a private placement." (Compl. ¶ 922.)  Even if this allegation were true—and it is not (Fritsch Decl., Ex. I at 13-14)—this limited involvement would not trigger liability under the Texas Securities Act.

As this Court has recognized, the elements of an aiding and abetting claim under the Texas Securities Act are:

> (1) the existence of a primary violation of the securities laws, (2) that the aider has a general awareness of its role in the violation, (3) that the aider gave substantial assistance in the violation, and (4) that the aider intended to deceive the plaintiff or acted with reckless disregard for the truth of the representations made by the primary violator.

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 235 F. Supp. 2d 549, 568 (S.D. Tex. 2002).  In addition to the reasons set forth in the Joint Memorandum (*see* Joint Memorandum at 19-20), Silvercreek's allegations concerning Barclays' involvement in the initial private placement are insufficient to state a claim under the Texas Securities Act because they do not demonstrate "substantial assistance" in connection with the public offering in which Silvercreek was allegedly misled.

In order to show "substantial assistance," a complaint must allege "intimate[] involve[ment] in the securities transactions at issue." *Lane Hartman Ltd.* v. *P.R.O. Missions, Inc.*, No. Civ. A. 3:95-CV-0869-P, 1997 U.S. Dist. LEXIS 23068, at *18-19 (N.D. Tex. Aug. 5, 1997).  Here, Barclays did not provide any assistance—let alone substantial assistance—in connection with the public offering of notes that

Silvercreek acquired, and Barclays' alleged involvement in a separate securities transaction pre-dating Silvercreek's purchase by months cannot give rise to liability under the Texas Securities Act. *See*, *e.g*., *Crescendo Invs., Inc*. v. *Brice*, 61 S.W.3d 465, 473 (Tex. App. 2001) (sustaining directed verdict finding lack of "substantial assistance" because plaintiffs failed to show that the defendants participated in the actual business transaction that allegedly caused them harm).

## CONCLUSION

For the foregoing reasons and those set forth in the Joint Memorandum, Silvercreek's claims against Barclays should be dismissed with prejudice.

Dated: September 27, 2011                          Respectfully submitted,

/s/ David H. Braff
David H. Braff
Marc De Leeuw
Jeffrey T. Scott
Joshua Fritsch
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000
Facsimile:   (212) 558-3588

Barry Abrams
(Attorney-in-Charge)
Southern District I.D. No. 2138
State Bar No. 00822700
BLANK ROME LLP
700 Louisiana, Suite 4000
Houston, TX  77002
Telephone:  (713) 228-6601
Facsimile:   (713) 228-6605

*Attorneys for Defendants Barclays PLC and Barclays Capital Inc.*

## **CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on September 27, 2011, which caused an electronic copy of this document to be served on all filing users who have appeared in this matter.

                                                              /s/ Joshua Fritsch
                                                              Joshua Fritsch