**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENRON CORP., et al.,<br><br>Defendants. | Civil Action No. H-01-3624<br>(Consolidated) |
| This Document Relates to:<br><br>SILVERCREEK MANAGEMENT, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITIGROUP, INC., et al.,<br><br>Defendants. | Civil Action No. H-03-0815<br>(Coordinated) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DEUTSCHE BANK'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT (DOCKET # 121)**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

I. PLAINTIFFS' ALLEGATIONS REGARDING THE TAX TRANSACTIONS FAIL TO ADEQUATELY PLEAD CLAIMS FOR AIDING AND ABETTING OR CIVIL CONSPIRACY ..... 3

A. AIDING AND ABETTING ..... 3

B. CIVIL CONSPIRACY TO COMMIT FRAUD ..... 6

II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 11 ..... 7

CONCLUSION ..... 12

**TABLE OF AUTHORITIES**

**CASES**

**Page**

Am. High-Income Trust v. Alliedsignal,
329 F.Supp.2d 534 (S.D.N.Y. 2004) .......... 8, 9

Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42 (2d Cir. 1991) .......... 8

Cromer Fin. Ltd. v. Berger,
137 F.Supp.2d 452 (S.D.N.Y. 2001) .......... 5

Fezzani v. Bear, Stearns & Co.,
592 F.Supp.2d 410 (S.D.N.Y. 2008) .......... 6

Filler v. Hanvit Bank,
339 F.Supp.2d 553 (S.D.N.Y. 2004) .......... 4

In re HealthSouth Corp. Sec. Litig.,
No. 2:03-cv-1500-KOB-TMP (N.D.Ala. Feb. 26, 2009) .......... 10-11

Herman & MacLean v. Huddleston,
459 U.S. 375 (1983) .......... 8, 11

JP Morgan Chase Bank v. Winnick,
406 F.Supp.2d 247 (S.D.N.Y. 2005) .......... 6

Lenczycki v. Shearson Lehman Hutton, Inc.,
656 N.Y.S.2d 609 (N.Y. App. Div. 1997) .......... 4, 5

In re Livent, Inc. Noteholders Sec. Litig.,
151 F.Supp.2d 371 (S.D.N.Y. 2001) .......... 8, 10

McDaniel v. Bear Stearns & Co.,
196 F.Supp.2d 343 (S.D.N.Y. 2002) .......... 5

Neuwirth Inv. Fund, Ltd. v. Swanton,
422 F. Supp. 1187 (S.D.N.Y. 1975) .......... 9

Newby v. Enron Corp., (In re Enron Corp. Sec. Der. "ERISA" Litig.),
761 F.Supp.2d 504 (S.D. Tex. 2011) .......... 3, 4

Newby v. Enron Corp., (In re Enron Corp. Sec. Der. "ERISA" Litig.),
310 F.Supp.2d 819 (S.D. Tex. 2004) .......... 1

Newby v. Enron Corp., (In re Enron Corp. Sec. Der. "ERISA" Litig.),
235 F.Supp.2d 549 (S.D. Tex. 2002) ........ 7

In re Refco, Inc. Sec. Litig.,
503 F.Supp.2d 611 (S.D.N.Y. 2007) ........ 7, 8, 9, 10

In re Safety-Kleen,
No. C/A 3:00-1145-17, 2002 WL 32349819 (D.S.C. Mar. 27, 2002) ........ 10

In re Sec. Litig. BMC Software, Inc.,
183 F.Supp.2d 860 (S.D. Tex. 2001) ........ 8

VTech Holdings, Ltd. v. PricewaterhouseCoopers, LLP,
348 F.Supp.2d 255 (S.D.N.Y. 2004) ........ 4

Wight v. BankAmerica Corp.,
219 F.3d 79 (2d Cir. 2000) ........ 3

**STATUTES & RULES**

15 U.S.C. § 77b(a)(11) ........ 8

Fed. R. Civ. P. 12(b)(6) ........ 1

Deutsche Bank AG and Deutsche Bank Securities Inc.[1] (collectively, "Deutsche Bank") respectfully submit this memorandum of law in support of the Financial Institutions' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Third Amended Complaint (the "TAC") of Silvercreek Management Inc., Silvercreek Limited Partnership, Silvercreek II Limited, OIP Limited, and Pebble Limited Partnership (collectively, "Plaintiffs") in the above-captioned action (Docket # 129) and the joint memorandum of law of the Financial Institutions (Docket # 130) filed in support thereof (the "Joint Memorandum of Law"). Deutsche Bank fully incorporates herein the Joint Memorandum of Law.[2] Deutsche Bank files this individual brief to focus on additional failures of pleading with regard to it that necessitate the dismissal of TAC Counts One, Two, Three, and Six as against Deutsche Bank. For the reasons already explained in the Joint Memorandum of Law, Count Nine should also be dismissed as against Deutsche Bank. Counts Four, Five, Seven, Eight, and Ten do not apply to Deutsche Bank.

## PRELIMINARY STATEMENT

Deutsche Bank wholly supports, adopts, and incorporates by reference the Joint Memorandum of Law. With this additional memorandum, Deutsche Bank addresses additional deficiencies in the TAC beyond the numerous defects already identified in the Joint Memorandum of Law.

**First**, though Plaintiffs spend a significant portion of their pleading describing deals between Enron and Deutsche Bank, and particularly focus on four tax transactions which

---

[1] Deutsche Bank Securities Inc. was formerly known as Deutsche Bank Alex.Brown Inc., which is named as a separate defendant in this action. This Court has already recognized that Deutsche Bank Alex.Brown Inc. is no longer a legal entity subject to suit given its formal name change to Deutsche Bank Securities Inc. on or about March 29, 2002. See Newby v. Enron Corp., (In re Enron Corp. Sec. Derivatives "ERISA" Litig., 310 F.Supp.2d 819, 826 (S.D. Tex. 2004).

[2] Where not defined, capitalized terms used herein are given the same meaning as in the Joint Memorandum of Law.

Plaintiffs allege were artificial and lacked a legitimate business purpose (the "Tax Transactions"), they fail to allege with the requisite particularity that any of these deals were entered into by Deutsche Bank with knowledge of Enron's fraud or substantially assisted Enron in perpetrating its fraud. This failure is an additional critical defect in Plaintiffs' claims for aiding and abetting negligent misrepresentation and common law fraud, and for civil conspiracy to commit fraud. Plaintiffs seek to draw attention away from these failings with extensive citations to statements by various Deutsche Bank personnel and other third parties, including the court appointed examiner in the Enron bankruptcy proceedings, which consist of irrelevant commentary and third party hindsight regarding the Tax Transactions. Though lengthy in its description, the TAC's allegations regarding Deutsche Bank's involvement in transactions with Enron fails to support Plaintiffs' claims.

**Second**, Plaintiffs have failed to plead facts that establish that Deutsche Bank was an underwriter for the purposes of liability under Section 11 of the 1933 Securities Act. Deutsche Bank acted as an initial purchaser in the private placement offering of the Zero Notes. Only the public offering was pursuant to a registration statement, and thus only that offering could give rise to Section 11 liability. It is indisputable that a Section 11 claim against an initial purchaser in a private offering is not adequately pleaded by conclusory assertions that the defendant was an underwriter for purposes of the later public offering. Rather, Plaintiffs must allege facts that specify either what the defendant's role was in the creation of the allegedly fraudulent registration statement or that the defendant sold Plaintiffs the registered securities at issue. Plaintiffs have failed to do either. Instead, Plaintiffs seek to conflate the two transactions, essentially implying guilt by association and hoping this Court will not parse the difference between the transactions. Such tactics are not permissible.

## ARGUMENT

### I. PLAINTIFFS' ALLEGATIONS REGARDING THE TAX TRANSACTIONS FAIL TO ADEQUATELY PLEAD CLAIMS FOR AIDING AND ABETTING OR CIVIL CONSPIRACY.

Deutsche Bank adopts all of the arguments made in the Joint Memorandum of Law regarding Plaintiffs' failure to adequately plead its aiding and abetting negligent misrepresentation and fraud claims, and conspiracy to commit fraud claims. However, given Plaintiffs' extensive allegations regarding the Tax Transactions, Deutsche Bank makes this supplemental filing to establish that these particular allegations against Deutsche Bank fail to support such claims.

#### A. Aiding and Abetting

As explained in the Joint Memorandum of Law, to prevail on its aiding and abetting claims, a plaintiff must "plead facts showing the 'existence of a fraud, defendant's knowledge of the fraud, and that the defendant provided substantial assistance to advance the fraud's commission'." Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir. 2000); see also Newby v. Enron Corp., (In re Enron Corp. Sec. Derivatives "ERISA" Litig., 761 F.Supp.2d 504, 539 (S.D. Tex. 2011) ("Westboro Props. I") (citing New York law).[3] For all the reasons explained in the Joint Memorandum of Law, Plaintiffs fail to plead such facts regarding Deutsche Bank. In addition, the facts alleged regarding the Tax Transactions are insufficient to establish aiding and abetting liability for Deutsche Bank.

[3] Though these cases deal with aiding and abetting common law fraud, Deutsche Bank reiterates the position established in the Joint Memorandum of Law that New York law does not recognize a theory of aiding and abetting negligent misrepresentation and that therefore, if considered at all, the standards for aiding and abetting common law fraud should apply.

Nowhere in Plaintiffs' extensive description of these transactions do they state with the requisite particularity what actual knowledge Deutsche Bank had of the existence of the supposed fraud perpetrated against the Plaintiffs or anyone else.[4] Conclusory allegations that Deutsche Bank "had direct knowledge" (TAC ¶ 470) of Enron's fraud merely because of its involvement in business dealings with Enron are not sufficient. See Lenczycki v. Shearson Lehman Hutton, Inc., 656 N.Y.S.2d 609, 610 (N.Y. App. Div. 1997) (aiding and abetting claim dismissed "in the absence of evidence that [defendants] knew of [the primary wrongdoer's] intention" to perpetrate the wrong). Allegations of constructive knowledge or recklessness are insufficient to allege the requisite state of mind of actual and concrete knowledge of the underlying fraud. See Filler v. Hanvit Bank, 339 F.Supp.2d 553, 557 (S.D.N.Y. 2004) ("Constructive knowledge of the primary fraud . . . is not sufficient to support an aiding and abetting claim."). Also insufficient are allegations that a defendant "should have known" about the fraud. See VTech Holdings, Ltd. v. PricewaterhouseCoopers, LLP, 348 F.Supp.2d 255, 269 (S.D.N.Y. 2004).

Rather than providing any evidence of actual knowledge, Plaintiffs rely on conclusory allegations, irrelevant statements attributed to Deutsche Bank and Enron personnel, irrelevant "tax opinions" of various law firms, and hindsight observations from the court appointed bankruptcy examiner[5] and from the Fastow Testimony. (See, e.g., TAC ¶¶ 370, 382, 391, 394, 398, 413, 426, 431, 462-73, 478.) None of these allegations actually demonstrate Deutsche Bank had any knowledge of the supposed fraud perpetrated against Plaintiffs.

---

[4] (See TAC ¶¶ 360-457, 462-77.)

[5] As this court noted in Westboro Props. I, "it is irrelevant what . . . any other authority said in another suit or a report about the collapse of Enron." 761 F.Supp.2d at 566. What is at issue is whether Plaintiffs in this action have adequately pleaded their claims. See id.

Moreover, Plaintiffs' allegations about the lack of a legitimate business purpose for the Tax Transactions do not establish the required actual knowledge. Plaintiffs quote excerpts from documents attributed to Deutsche Bank representatives and offer various other allegations to support the unremarkable proposition that Deutsche Bank knew that Enron expected to realize financial accounting benefits from the Tax Transactions. (See, e.g., TAC ¶¶ 364-70.) Knowledge of Enron's intention to realize financial accounting benefits does not establish knowledge that those benefits were improper, much less actual knowledge of fraud; and the TAC utterly fails to allege any particular facts that show that Deutsche Bank had actual knowledge that Enron entered into the Tax Transactions to defraud investors. See Lenczycki, 656 N.Y.S.2d at 610; TAC ¶¶ 462-67.

Plaintiffs further fail to allege substantial assistance. Plaintiffs must allege facts establishing not only that the defendant rendered assistance that was both "substantial and knowing," but also that the defendant's actions "proximately caused" the harm on which the primary liability is predicated. See McDaniel v. Bear Stearns & Co., 196 F.Supp.2d 343, 352 (S.D.N.Y. 2002). To allege "proximate cause," Plaintiffs cannot rely on "but for" causation: they must allege facts – with sufficient particularity under Rule 9(b) – that Deutsche Bank's conduct directly and proximately caused their injuries. Cromer Fin. Ltd. v. Berger, 137 F.Supp.2d 452, 470 (S.D.N.Y. 2001). Insofar as Plaintiffs have not (and cannot) allege that Deutsche Bank was involved in any manner with the disclosure of the Tax Transactions, this burden cannot be met by Plaintiffs.

Plaintiffs do not allege with particularity that Deutsche Bank's assistance was "substantial and knowing." (TAC ¶¶ 371-432.) Instead, Plaintiffs rely on conclusory allegations

and speculation regarding Deutsche Bank's alleged involvement in Enron's fraud, failing to allege any particular facts that demonstrate such involvement. (See TAC ¶¶ 470, 72-73, 805-06.)

Plaintiffs attempt to allege the required proximate cause only by making conclusory assertions that, given its role in "fraudulent" transactions, "Deutsche Bank is directly responsible for the false information conveyed to the public and to Silvercreek" (TAC ¶ 472) and that such information "significantly inflated the values at which both the Zero Bonds and 7% Notes were sold." (TAC ¶ 476.) Plaintiffs do not detail the actual causal connection between these supposedly fraudulent transactions and its losses. Plaintiffs fail to allege that the Tax Transactions were a contributing cause of Enron's collapse, or that this caused Plaintiffs to suffer losses.

In sum, Plaintiffs have failed to plead that Deutsche Bank gained any knowledge of Enron's fraud or that it offered substantial assistance in any such fraud through its alleged participation with Enron in the Tax Transactions. Plaintiffs' aiding and abetting claims thus fail.

**B. Civil Conspiracy to Commit Fraud**

As is discussed in more detail in the Joint Memorandum of Law, to adequately plead claims for conspiracy to commit fraud under New York law, Plaintiffs must plead, under the heightened pleading standards of Rule 9(b), (i) an agreement among two or more parties, (ii) a common objective, (iii) acts in furtherance of the objective, and (iv) knowledge. JP Morgan Chase Bank v. Winnick, 406 F.Supp.2d 247, 259 (S.D.N.Y. 2005); Fezzani v. Bear, Stearns & Co., 592 F.Supp.2d 410, 428 (dismissing conspiracy claims for failure to comply with Rule 9(b)).

For the same reasons discussed above in the context of aiding and abetting, Plaintiffs have failed to plead any knowledge of the underlying fraud on the part of Deutsche Bank. As they fail to demonstrate that Deutsche Bank even had knowledge of any fraud,

Plaintiffs fall far well short of demonstrating an agreement or common objective regarding any such fraud as well.

Based on the foregoing, and on the Joint Memorandum of Law, Plaintiffs' claims for aiding and abetting fraud and negligent misrepresentation and claim of civil conspiracy should be dismissed with prejudice.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 11.

Plaintiffs also have failed to plead facts that could establish that Deutsche Bank was an underwriter of the Zero Notes subject to liability under Section 11 of the 1933 Securities Act. In order to state a Section 11 claim, Plaintiffs must allege either that Deutsche Bank sold them the Zero Notes offered pursuant to the registration statement or that Deutsche Bank participated in the preparation of the registration statement for the Zero Notes. Plaintiffs have done neither. (See TAC ¶¶ 143-59, 879-891.) Instead, Plaintiffs seek to obscure this deficiency by conflating the February 2001 private placement of the Zero Notes with the subsequent June 2001 public offering.

It is not sufficient for Plaintiffs to merely make conclusory allegations that Deutsche Bank was an underwriter for purposes of Section 11 liability. See In re Refco, Inc. Sec. Litig., 503 F.Supp.2d 611, 629 (S.D.N.Y. 2007) (dismissing Section 11 claim where pleading was mere conclusory allegation of participation in registration statement with no specific allegations as to the extent of the participation or what actual actions the defendant took); Newby v. Enron Corp., (In re Enron Corp. Sec. Derivatives "ERISA" Litig.), 235 F.Supp.2d 549, 564 (S.D. Tex. 2002) n.3 (noting that "conclusory allegations or legal conclusions masquerading as factual conclusions do not defeat a motion to dismiss").

Notwithstanding the generally broad definition of "underwriter,"[6] to adequately plead that a defendant who is involved in a private placement transaction qualifies as an "underwriter" in a subsequent registered public offering, as occurred here, Plaintiffs must allege specific facts that demonstrate how Deutsche Bank participated in the creation of the registration statement for the Zero Notes or that Plaintiffs purchased their notes in the registered offering from Deutsche Bank. See Refco, 503 F.Supp.2d at 629-30; Am. High-Income Trust v. Alliedsignal, 329 F.Supp.2d 534, 541-42 (S.D.N.Y. 2004) (dismissing Section 11 claim against defendants because of plaintiffs' failure to allege they were involved in the preparation of the registration statement or that they sold plaintiffs the securities at issue); In re Livent, Inc. Noteholders Sec. Litig., 151 F.Supp.2d 371, 430-32 (S.D.N.Y. 2001) (same); see also Herman & MacLean v. Huddleston, 459 U.S. 375, 382 (1983) ("a Section 11 action must be brought by a purchaser of a registered security, [and] must be based on misstatements or omissions in a registration statement"). Further, Plaintiffs may not conflate the unregistered private placement transaction, with which Deutsche Bank was involved (though most assuredly not as an underwriter), with the later public offering, which is the only transaction at issue that can give rise to Section 11 liability.[7] See Refco, 503 F.Supp.2d at 627 (holding that Section 11 applies by its terms to registered offerings only and rejecting an argument that a rule 144A private placement and registered offering should be treated as one transaction for the purposes of Section 11).

---

6 The term "underwriter" is defined as "[a]ny person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking. . ." 15 U.S.C. § 77b(a)(11) (definitions applicable to Section 11).

7 The Private Placement Offering Memorandum, which is referenced in Plaintiffs' Complaint, is attached to the Declaration of Kiah Beverly-Graham (the "Beverly-Graham Decl."), Ex. A. Courts may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" on a motion to dismiss. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991); In re Sec. Litig. BMC Software, Inc., 183 F.Supp.2d 860, 882 (S.D. Tex. 2001) (a court may consider documents "integral to and explicitly relied on in the complaint," as well as the full text of documents that are partially quoted or referred to in the complaint).

The TAC patently fails to allege that Deutsche Bank sold Plaintiffs, or any other person, any of the Zero Notes or participated in the creation of the registration statement for those notes in any way. Instead, Plaintiffs conclusorily assert, without pointing to any specific facts, and without clearly distinguishing between the public offering and private placement, only that Deutsche Bank "purchased" the Zero Notes with a view to distribution and solicited, offered, and sold them to the investing public pursuant to the registration statement for the registered, public offering. (TAC ¶¶ 881, 84.) Plaintiffs' allegations fail to meet the requirements for demonstrating a party involved in a private placement offering is an "underwriter" for a later registered offering.[8] See Refco, 503 F.Supp.2d at 630; Am. High-Income Trust, 329 F.Supp.2d at 542.

Plaintiffs attempt to conflate the February 2001 private placement with the public offering, which was an entirely separate transaction that occurred months later. (See TAC ¶¶ 149, 152, 881-84.) For instance, in a description that inaccurately describes the transactions at issue, Plaintiffs allege "[i]n the initial stage one private placement on February 7, 2001, Enron sold $1.9 billion in Zero Notes . . . to the initial underwriters, including . . . Deutsche Bank . . . The initial underwriters then resold some of the Notes to institutional purchasers . . . and resold the balance in the stage two public offering, once the registration statement for these Notes had become effective." (TAC ¶ 149.) Shortly thereafter, Plaintiffs further allege "Deutsche Bank, JPMorgan and Barclays were initial underwriters of the Zero Notes." (TAC ¶ 152.) Plaintiffs'

---

8 That Deutsche Bank is listed as a "selling securityholder" in the prospectus for the Zero Notes is irrelevant. Such designation does not mean that Deutsche Bank actually sold anything. (See Form 424(b)(3) Prospectus filed with the SEC on July 25, 2001 at 46, Beverly-Graham Decl. Ex. B (indicating selling securityholders *may* sell Notes from time to time *if at all*).) The "selling securityholder" designation is not sufficient to transform Deutsche Bank into an underwriter for Section 11 purposes. See Neuwirth Inv. Fund, Ltd. v. Swanton, 422 F.Supp. 1187, 1196 (S.D.N.Y. 1975) (the mere fact that a stock certificate indicated the holder may be deemed an underwriter for purposes of the Securities Act of 1933 is not dispositive as "[t]he regulative scheme of the Securities Act would fall into disarray if parties to transactions could themselves specify how or when the Act was to be applied").

description erroneously suggests that the two transactions were integrated, which they were not, and that Deutsche Bank's role in the initial private placement can somehow establish its role as an underwriter, and thus support Section 11 liability, in the entirely separate public offering that occurred months later.

Such implications have no merit. There is no legal basis for merging the private placement with the public offering, as attempts to integrate publicly registered offerings with unregistered 144A private placements for the purposes of Section 11 liability are improper. See Refco, 503 F.Supp.2d at 627 (holding that Section 11 applies by its terms to registered offerings only and rejecting an argument that a rule 144A private placement and registered offering should be treated as one transaction for the purposes of Section 11); In re Safety-Kleen, No. C/A 3:00-1145-17, 2002 WL 32349819, at *1 (D.S.C. Mar. 27, 2002) (dismissing Section 11 claim attempting to integrate a two step transaction where the plaintiff purchased unregistered bonds because there was no basis on which the Rule 144A offering could be validly exempted from registration yet somehow deemed part of the registered transaction for purposes of Section 11). Given the clearly limited applicability of Section 11 claims to registered offerings, Deutsche Bank's role in the private placement is irrelevant. As courts have noted, Section 11 "provides a cause of action only for purchasers of securities issued pursuant to a registration statement and not for purchasers of unregistered securities issued through a private placement," and though private placement offerings are often followed by SEC-registered exchange offers, "to treat the two transactions as part of a single plan 'would render Rule 144A ineffective for a very substantial number of securities transactions, and defeat the capital market financing objectives the Rule 144A exception was designed to achieve.'" See Livent, 151 F.Supp.2d at 430-32; Refco, 503 F.Supp.2d at 627; see also Mem. Op. at 10 In re HealthSouth Corp. Sec. Litig., No.

2:03-cv-1500-KOB-TMP (N.D.Ala. Feb. 26, 2009) (recognizing, partially in reliance on an SEC position letter, that a private placement followed by a registered offering constitutes "two separate transactions" and that Section 11 liability must be based on the registration statement for the registered offering).

Finally, Plaintiffs allege that in purchasing the Zero Notes, they "read" and "relied" on the offering memorandum and prospectus for the Zero Notes. (TAC ¶ 158.) Reliance on the offering memorandum for the private placement, however, is unavailing. Section 11 claims "must be brought by a purchaser of a *registered* security, [and] must be based on misstatements or omissions in a *registration statement*." Herman, 459 U.S. at 382 (emphasis added). Plaintiffs' supposed "reliance" on the offering memorandum, which was for the unregistered private placement transaction, is irrelevant.[9] As to Plaintiffs' supposed reliance on the prospectus for the public offering, that allegation does nothing to remedy Plaintiffs' failure to allege that Deutsche Bank was involved in the creation of the registration statement or that Deutsche Bank itself sold them the Zero Notes.

As is more fully discussed in the Joint Memorandum of Law, Plaintiffs have now had four opportunities to plead legally sufficient allegations against Deutsche Bank, with the benefit of an extensive discovery process that lasted for more than two years and concluded long ago. If Plaintiffs cannot now adequately allege Deutsche Bank's role in the Zero Note Offering

---

[9] Further, the confidential private placement offering memorandum was provided only to a limited number of sophisticated institutional investors and solely for use in the connection with the proposed private offering of the notes. In particular, the notes and the common stock issuable upon the conversion of the notes were not registered under the Securities Act and were offered and sold only to qualified institutional buyers (as defined under Rule 144A under the Securities Act) in the United States and outside the United States only in accordance with Regulation S under the Securities Act. (See Private Placement Offering Memorandum at 1, Beverly-Graham Decl. Ex. A.) Moreover, the private placement offering memorandum on which Plaintiffs, almost all of whom are Canadian entities, allegedly relied makes clear that the Zero Notes cannot be offered or sold "in Canada or to residents of Canada except by way of a private placement . . ." (Id. at 45.)

to establish a Section 11 claim, they will never be able to. For that reason it is appropriate to dismiss the Section 11 claim with prejudice.

**CONCLUSION**

For the foregoing reasons, as well as those described in the Joint Memorandum of Law, Deutsche Bank respectfully requests that the Court dismiss Plaintiffs' Third Amended Complaint, with prejudice.

Dated: September 27, 2011
Houston, Texas

Respectfully submitted,

By: /s/ Eric D. Wade

Eric D. Wade
State Bar No. 00794902
Daniel K. Hedges
State Bar No. 09369500
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6255

OF COUNSEL:

Lance Croffoot-Suede
Kimberly Evans
Kiah Beverly-Graham
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 903-9000
Facsimile: (212) 903-9100

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of September, 2011, a true and correct copy of the foregoing was served on all counsel of record through the Southern District of Texas CM/ECF electronic filing system.

/s/ Eric D. Wade