UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------- x
IN RE ENRON CORPORATION SECURITIES, : MDL 1446
DERIVATIVE AND "ERISA" LITIGATION :
------------------------------------------------------------- x
MARK NEWBY, et al., :
:
      Plaintiffs, : Civil Action No. H-01-3624
: and consolidated and
: coordinated cases
  v. :
:
ENRON CORP., et al., :
      Defendants. x
-------------------------------------------------------------
SILVERCREEK MANAGEMENT INC., et al., :
:
      Plaintiffs, : Civil Action No. H-03-0815
:
v. :
:
CITIGROUP, INC., et a :
:
      Defendants. x
-------------------------------------------------------------

**JPMORGAN CHASE'S REPLY MEMORANDUM IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT (Instr. No. 121)**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    A.    Plaintiffs Must Trace Their Zero Coupon Notes To An Offering For Which JPMSI Was An Underwriter ...................................................................... 2

    B.    Plaintiffs Have Not Alleged, As They Must, That Their Zero Coupon Notes Are Traceable To An Offering For Which JPMSI Was An Underwriter ................................................................................................................ 6

CONCLUSION .............................................................................................................................. 8

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .................................................................................. 2, 7

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs.,
Inc.*, 497 F. 3d 546 (5th Cir. 2007).......................................................................................... 7

*Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437
(N.D. Cal. 1990) ....................................................................................................................... 5

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d
1132 (C.D. Cal. 2008) ("*Countrywide I*") .............................................................................. 4, 5

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 761 F.
Supp. 2d 504 (S.D. Tex. 2011) ............................................................................................... 8

*In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364
(S.D. Tex. 2011) ..................................................................................................................... 7

*In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326
(S.D.N.Y. 2011) ..................................................................................................................... 6

*Nairobi Holdings, Ltd. v. Brown Bros. Harriman & Co.*,
No. 02 Civ. 1230(LMM), 2004 WL 1124660 (S.D.N.Y.
May 20, 2004) ......................................................................................................................... 8

**Statutes**

15 U.S.C. § 77k................................................................................................................................ 1

15 U.S.C. § 77k(d) .......................................................................................................................... 2

**Regulations**

Securities Offering Reform, Securities Act Release No. 33-
8591, 85 S.E.C. Docket 2871 (August 3, 2005)....................................................................... 3

Defendants JPMorgan Chase & Co. and J.P. Morgan Securities Inc. (n/k/a J.P. Morgan Securities LLC) ("JPMSI") (collectively, "JPMorgan Chase") respectfully submit this reply memorandum in further support of their motion to dismiss Plaintiffs' Third Amended Complaint (Instr. No. 121).

## PRELIMINARY STATEMENT

On July 25, 2001, the Final Prospectus and Registration Statement for Enron's Zero Coupon Notes (the "July 25 Registration Statement") became effective. As a result, certain financial institutions became eligible to sell the Zero Coupon Notes – initially purchased in the February 7, 2001 private placement – to the public (the "July 25 Public Offering"). JPMSI was not one of them. Instead, under the express terms of the Final Prospectus, JPMSI did not become eligible to sell its Zero Coupon Notes to the public until August 3, 2001 (the "August 3 Public Offering"), when it was identified as a "selling securityholder" in a supplement to the Final Prospectus (the "August 3 Supplement," resulting in the "August 3 Registration Statement"). Although Plaintiffs seek to belittle the importance of the August 3 Supplement (calling it a "technical amendment"), they do not, and cannot, dispute that until August 3, 2001, JPMSI could not possibly have sold any Zero Coupon Notes and, moreover, JPMSI could not have been an underwriter of the Zero Coupon Notes sold prior to that date. Thus, rather than a mere technicality, the filing and timing of the August 3 Supplement is critical to any determination of JPMSI's potential liability as an underwriter under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.

*First*, Section 11(d) of the Securities Act expressly precludes Plaintiffs from imposing Section 11 liability on JPMorgan Chase unless JPMorgan Chase was an underwriter at the time Plaintiffs' Zero Coupon Notes were initially sold in a public, registered offering. Plaintiffs ask this Court to ignore Section 11(d)'s controlling statutory language because several

1

decisions interpret it for statute of limitations purposes.  However, Plaintiffs offer no authority, either case law or legislative history, to justify overriding the statute's express and unambiguous language.

*Second*, Plaintiffs have not alleged—as they must—that their Zero Coupon Notes are traceable to an offering for which JPMSI was an underwriter.  Plaintiffs instead argue that this issue should be saved for summary judgment, and not decided at the motion to dismiss stage.  But Plaintiffs ignore the Supreme Court's pleading standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), under which they have failed to allege a plausible claim against JPMorgan Chase.

For the reasons set forth above and herein, JPMorgan Chase respectfully requests that the Court dismiss Plaintiffs' Section 11 claim against JPMorgan Chase with prejudice.

## ARGUMENT

Plaintiffs' Section 11 claim against JPMorgan Chase should be dismissed because Plaintiffs have not alleged, as they must, facts sufficient to trace their Zero Coupon Notes to an offering for which JPMSI was an underwriter.

### A.   Plaintiffs Must Trace Their Zero Coupon Notes To An Offering For Which JPMSI Was An Underwriter

The express terms of Section 11(d) preclude a registration statement from being considered effective as to a financial institution prior to the time when such financial institution became an underwriter:

> Where a financial institution "[became] an underwriter with respect to the security after the part of the registration statement with respect to which [the financial institution's] liability is asserted [became] effective," "such part of the registration statement shall be considered as having become effective with respect to [that financial institution] as of the time when [it] became an underwriter." 15 U.S.C. § 77k(d).[1]

---

[1]   The SEC has reaffirmed that, when "a person that becomes an underwriter after [the initial] effective date"—such as JPMorgan Chase here—"Securities Act Section 11(d) provides that the date the person became an underwriter is its effective date."  Securities

2

Accordingly, JPMSI cannot be held liable for any purported misstatements in the Registration Statement of the Zero Coupon Notes until it "became an underwriter" of those Notes – *i.e.*, at the earliest, August 3, 2001, when it became eligible to sell the Notes to the public. To avoid application of Section 11(d), Plaintiffs suggest that this Court should ignore it because, according to Plaintiffs, Section 11(d) simply, "refresh[es] the effective date (from which the statute of limitations runs) when an underwriter is added." Corrected Opp'n at 155 n.53. This argument has no merit. First, the plain language of Section 11(d) is absolutely clear and unambiguous and there is nothing in Section 11(d)—or the Securities Act, for that matter—that limits it to circumstances pertaining to statute of limitations. Second, Plaintiffs cite neither case law nor legislative history, at all, that supports their position to limit Section 11(d) in such a manner. Finally, the fact that cases have applied Section 11(d) when discussing statutes of limitations is entirely consistent with JPMorgan Chase's position here – the statute of limitations begins to run against an underwriter when such underwriter first becomes potentially subject to Section 11 liability.

Plaintiffs also contend that this Court should ignore the August 3 Supplement because it, "did not purport to amend the registration statement in any substantive way." Corrected Opp'n at 154. The premise of Plaintiffs' argument, however, is fatally flawed: Before the August 3 Supplement became effective, JPMSI was not a selling securityholder and therefore was barred from selling the Zero Coupon Notes. *See* Youngwood Aff. Ex. A, Final Prospectus at 43. It was not until after the August 3 Supplement was effective that JPMSI became a selling securityholder and—arguably, at least under Plaintiffs' theory—a statutory underwriter for

---

Offering Reform, Securities Act Release No. 33-8591, 85 S.E.C. Docket 2871 (August 3, 2005).

Section 11 purposes.[2] Plaintiffs identify not one case (because there is none) supporting their illogical claim that a person can be held liable under Section 11 in connection with the sale of securities *before* that person even became an underwriter. And yet this is exactly what Plaintiffs ask this Court to do here.

Without support for their position, Plaintiffs rely on an incorrect reading of *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ("*Countrywide I*"). *Countrywide I* supports JPMorgan Chase's position that where, as here, a post-effective amendment is necessary to trigger a Section 11 claim, plaintiffs must trace their securities to such amendment. *Cf.* 588 F. Supp. 2d at 1165 ("[I]f a statement that was not materially false or misleading at the first effective date becomes so (due to intervening events) by the second effective date, buyers that can trace their purchase to the second effective date have a claim while those who can only trace their purchase to the first do not.").[3] Here, the August 3 Supplement is necessary to trigger Plaintiffs' Section 11 claims against JPMorgan Chase because, prior to that post-effective amendment, JPMSI was not a selling securityholder and therefore not an underwriter. Accordingly, JPMorgan Chase properly cited *Countrywide I* for the proposition that, in order for Plaintiffs to assert a Section 11 claim against JPMorgan Chase,

---

[2]  Indeed, for all the additional reasons described in Point III of Deutsche Bank's Reply Memorandum in Further Support of Deutsche Bank's Motion to Dismiss Plaintiffs' Third Amended Complaint, which are hereby incorporated by reference, Plaintiffs fail to plead facts sufficient to demonstrate that JPMorgan Chase was an underwriter for purposes of Section 11 liability. Like Deutsche Bank, there are no specific factual allegations that JPMorgan Chase sold any notes under the registration statement.

[3]  JPMorgan Chase acknowledges that the alleged misstatements in the July 25 Registration Statement are the same as those in the August 3 Registration Statement. The key, however, is that JPMSI was not an underwriter at the time of the July 25 Registration Statement, and therefore any alleged misstatements cannot be deemed made by JPMSI—and thus trigger Section 11 liability for JPMorgan Chase—*until after* JPMSI became a selling securityholder in connection with the August 3 Registration Statement.

Plaintiffs must "trace their security to the registration statement *as amended*" by the August 3 Supplement.  *Id*.  (emphasis added).

Plaintiffs' claim that the court in *Countrywide I* "actually rejects Chase's argument" misconstrues the court's holding.  Corrected Opp'n at 155.  Although the court in *Countrywide I* found that, under certain circumstances, plaintiffs may not be required to trace their securities to a particular post-effective amendment, this holding is premised on the condition that:  "the initial shelf registration statement contained an actionable statement or omission that is common to more than one issuance under the shelf registration . . . ."  588 F. Supp. 2d at 1165.  The fact is—for all the reasons already stated—JPMSI was not an underwriter at the time the initial registration statement first became effective and therefore such registration statement ***did not*** contain "an actionable statement or omission" as to JPMorgan Chase.[4]

Plaintiffs' attempt to distinguish *Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437 (N.D. Cal. 1990), likewise is unpersuasive.  Consistent with JPMorgan Chase's position, the court in *Guenther* reasoned that securities sold in connection with an allegedly defective post-effective amendment constituted an offering separate and distinct from the offering prior to the amendment.  *Guenther*, 759 F. Supp. at 1439-41.  Plaintiffs try to explain away this holding by noting that only the post-effective amendment—and not the initial registration statement—was alleged to have been false in *Guenther*.  Corrected Opp'n at 155 n.54.  But what Plaintiffs overlook is the court's inescapable logic:  Where a post-effective amendment materially alters a plaintiff's claim, such plaintiff must trace his or her securities

---

[4] Moreover, *Countrywide I* did not even involve the issue here of whether plaintiffs seeking to impose Section 11 liability on a newly added underwriter pursuant to a post-effective amendment must trace their securities to the new offering for which such person actually was an underwriter.  Plaintiffs' suggestion that this Court apply the holding in *Countrywide I* wholesale to an easily distinguishable situation ignores *Countrywide I*'s warning concerning "the narrow application of [its] analysis."  *Id*. at 1167.

specifically to such post-effective amendment. Here, even under Plaintiffs' theory, JPMSI only became an underwriter of the Zero Coupon Notes[5] after a post-effective amendment – the August 3 Supplement. Accordingly, to impose Section 11 liability on JPMSI, Plaintiffs must, at a minimum, trace their securities to the August 3 Public Offering associated with that post-effective amendment.

B.      **Plaintiffs Have Not Alleged, As They Must, That Their Zero Coupon Notes Are Traceable To An Offering For Which JPMSI Was An Underwriter**

Plaintiffs do not dispute—and indeed acknowledge—that they are required, at the very least, to allege "general allegations that [they] purchased pursuant to or traceable to a false registration statement." Corrected Opp'n at 156; *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 373 (S.D.N.Y. 2011). In seeking to impose Section 11 liability on JPMorgan Chase here, it also is axiomatic these "general allegations" must demonstrate that Plaintiffs purchased their Zero Coupon Notes pursuant to or traceable to a false registration statement for which JPMorgan Chase was an underwriter. Specifically, Plaintiffs must allege that their Zero Coupon Notes were purchased pursuant to or traceable to the August 3 Public Offering—at which point JPMSI was first listed as a selling securityholder and permitted to sell securities to the public.[6] Plaintiffs, however, fail even to acknowledge that a separate August 3 Public Offering existed as to JPMorgan Chase, let alone provide a single factual allegation that their securities are traceable to such offering.

---

[5]      As mentioned in footnote 2, JPMorgan Chase further disputes that it was an underwriter of the Zero Coupon Notes given Plaintiffs' failure to allege specific factual allegations that JPMorgan Chase sold any such Notes under the registration statement.

[6]      JPMorgan Chase does not argue that Plaintiffs must specifically trace their Zero Coupon Notes to the August 3 Public Offering as separate and distinct from offerings under the August 15th, September 21st, or October 11th supplements. The key is that Plaintiffs must allege traceability of their Notes to the August 3 Public Offering as separate and distinct from the initial July 25 Public Offering, for which JPMSI was not an underwriter.

Nevertheless, in their Opposition, Plaintiffs claim to have met the required pleading standard. They base this contention on the fact that, in Paragraph 885 of the Third Amended Complaint, Plaintiffs allege that they acquired Zero Coupon Notes "pursuant or traceable to the false registration statement," which they had "expressly defined [735 paragraphs previously] to include the supplement adding Chase as a selling securityholder." TAC ¶¶ 150, 885; Corrected Opp'n at 156. This allegation, however, does not suffice and does not meet the pleading standards of *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Third Amended Complaint broadly defines registration statement to refer to the initial registration statement and *all* post-effective supplements: "Enron filed . . . a Form 424(b)(3) prospectus dated July 18, 2001, and supplements 1-4 to the Form 424(b)(3) prospectus dated August 3, 2001, August 15, 2001, September 21, 2001, and October 11, 2001, respectively (collectively, the 'registration statement')." TAC ¶ 150. Plaintiffs cannot simply conflate multiple offerings into one definition and then claim to have satisfied the traceability requirement. This is especially true given that the Third Amended Complaint is devoid of any allegations, at all, that indicate that the Zero Coupon Notes sued upon can be traced to the August 3 Offering, rather than the July 25 Offering in which JPMSI did not participate and unequivocally was *not* an underwriter. As such, Plaintiffs, quite simply, have failed to allege a plausible Section 11 claim against JPMorgan Chase. *See In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 384 (S.D. Tex. 2011) (dismissing Section 11 claim with prejudice after applying *Iqbal* standard of "facial plausibility," *Iqbal*, 129 S. Ct. at 1949, and reiterating that the Fifth Circuit does not "'accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions'" (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F. 3d 546, 550 (5th Cir. 2007))).

7

Plaintiffs have already had four, unsuccessful attempts to plead a viable Section 11 claim against JPMorgan Chase with the full benefit of the extensive discovery taken in the Enron-related multi-district litigation. Plaintiffs' failure to do so in their Third Amended Complaint justifies dismissal of their Section 11 claim against JPMorgan Chase with prejudice. *See In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 761 F. Supp. 2d 504, 530-31, 579 (S.D. Tex. 2011) (granting motion to dismiss under Rules 12(b)(6) and 9(b) and declaring case "closed" after plaintiffs failed to state a claim in their "third bite of the apple . . . filed after discovery was completed"); *Nairobi Holdings, Ltd. v. Brown Bros. Harriman & Co.*, No. 02 Civ. 1230(LMM), 2004 WL 1124660, at *5 (S.D.N.Y. May 20, 2004) (dismissing second amended complaint in securities fraud claim "with prejudice" because "three bites at the apple is enough").

## CONCLUSION

For the reasons set forth above, as well as in the Financial Institutions' Joint Reply Memorandum of Law, Plaintiffs' Section 11 Claim should be dismissed with prejudice as to Defendant JPMorgan Chase.

8

By: /s/ Richard W. Mithoff
Richard W. Mithoff
Attorney-in-Charge
Texas Bar No. 14228500
S.D. Tex. Bar No. 2102
MITHOFF LAW FIRM
One Allen Center, Penthouse
500 Dallas Street
Houston, TX 77002
Telephone: (713) 654-1122
Facsimile: (713) 739-8085

OF COUNSEL:
Thomas C. Rice
David J. Woll
Jonathan K. Youngwood
SIMPSON THACHER &
BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Charles A. Gall
Texas Bar No. 07281500
James W. Bowen
Texas Bar No. 02723305
HUNTON & WILLIAMS LLP
1445 Ross Ave., Suite 3700
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

ATTORNEYS FOR DEFENDANTS
JPMORGAN CHASE & CO. AND J.P.
MORGAN SECURITIES INC. (N/K/A
J.P. MORGAN SECURITIES LLC)

## CERTIFICATE OF SERVICE

  The undersigned certifies that on January 27, 2012, a copy of the foregoing instrument was served on the attorneys of record for all parties to the above cause through the CM/ECF System.

                 /s/ Steven M. Metro
                 Steven M. Metro