UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION | § § § § | MDL Docket No. 1446 |
| MARK NEWBY, et al., Individually and on Behalf of All Others Similarly Situated, <br><br>                Plaintiffs, <br><br>    v. <br><br> ENRON CORP., et al., <br><br>                Defendants. | § § § § § § § § § § § § | Civil Action No. H-01-3624 (Consolidated, Coordinated and Related Cases) |
| This Document Relates To: <br><br> Silvercreek Management Inc.; Silvercreek Limited Partnership; Silvercreek II Limited; OIP Limited; And Pebble Limited Partnership, <br><br>                Plaintiffs, <br><br>    v. <br><br> Citigroup, Inc., et al., <br><br>                Defendants. | § § § § § § § § § § § § § § § § § | Civil Action No. H-03-0815 |

**THE BARCLAYS DEFENDANTS' REPLY
MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION
<u>TO DISMISS THE THIRD AMENDED COMPLAINT (INSTR. # 121)</u>**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ..................................................................................................................................2

I.   SILVERCREEK'S SECURITIES ACT CLAIM SHOULD BE DISMISSED BECAUSE BARCLAYS DID NOT PARTICIPATE IN THE REGISTERED ZERO COUPON NOTES OFFERING. ................................2

II.  SILVERCREEK'S TSA CLAIM SHOULD BE DISMISSED BECAUSE BARCLAYS DID NOT PROVIDE ANY ASSISTANCE WITH RESPECT TO THE REGISTERED ZERO COUPON NOTES OFFERING. ........................................................................................................6

CONCLUSION ...............................................................................................................................9

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Crescendo Invs., Inc.* v. *Brice*,
 61 S.W.3d 465 (Tex. App.-San Antonio 2001, pet. denied)..........................................7

*Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt., LLC*,
 479 F. Supp. 2d 349 (S.D.N.Y. 2007)..........................................................................8

*Harden* v. *Raffensperger, Hughes & Co.*,
 65 F.3d 1392 (7th Cir. 1995) ....................................................................................4, 5

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
 03 MD 1529, 2007 U.S. Dist. LEXIS 66911 (S.D.N.Y. Sept. 7, 2007) ........................6

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
 235 F. Supp. 2d 549 (S.D. Tex. 2002) ..........................................................................7

*In re Livent, Inc. Noteholders Sec. Litig.*,
 151 F. Supp. 2d 371 (S.D.N.Y. 2001)...........................................................................3

*In re Refco, Inc. Sec. Litig.*,
 503 F. Supp. 2d 611 (S.D.N.Y. 2007)...........................................................................4

*In re Refco, Inc. Sec. Litig.*,
 No. 05 Civ. 8626 (GEL), 2008 U.S. Dist. LEXIS 62543
 (S.D.N.Y. Aug. 14, 2008) .............................................................................................5

*Lane Hartman Ltd.* v. *P.R.O. Missions, Inc.*,
 No. Civ. A. 3:95-CV-0869-P, 1997 U.S. Dist. LEXIS 23067
 (N.D. Tex. Aug. 5, 1997) ..............................................................................................6

*Prince* v. *Brydon*,
 764 P.2d 1370, (Or. 1988) ............................................................................................8

*Wyo. State Treasurer* v. *Moody's Investors Serv., Inc.*,
 *(In re Lehman Bros. Mortgage-Backed Sec. Litig.)*,
 650 F.3d 167 (2d Cir. 2011).........................................................................................5

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

**STATUTES, RULES AND REGULATIONS**

17 C.F.R. § 230.144A ..................................................................................................2, 3

15 U.S.C. § 77b...............................................................................................................5

15 U.S.C. § 77k...............................................................................................................6

# THE BARCLAYS DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (INSTR. # 121)

Defendants Barclays PLC and Barclays Capital Inc. (collectively, "Barclays") respectfully submit this reply brief in further support of their motion to dismiss the Silvercreek Plaintiffs' Amended Complaint, dated August 11, 2011 (Instr. #121) (the "Complaint"), filed on September 27, 2011 (Instr. #129), together with a supporting memorandum (Instr. #133) ("Mem."), and in response to the Corrected Opposition to the Bank Defendants' Motions to Dismiss submitted by Plaintiffs on January 3, 2012 (Instr. #142) ("Opp.").[1]

## PRELIMINARY STATEMENT

Silvercreek's opposition establishes conclusively that its statutory claims against Barclays must be dismissed. Silvercreek concedes that its claims under Section 11 of the Securities Act of 1933 (the "Securities Act") and Texas Securities Act ("TSA") can only be directed at those who underwrote or provided assistance for a *registered* securities offering. (Opp. 143-44, 160-61.) Yet, buried late in its brief in a footnote, Silvercreek admits that Barclays "is not alleged to have sold in the public offering" of the registered Zero Coupon Notes that Silvercreek purchased. (Opp. 146 n.46.) And Silvercreek concedes that a "subsequent exchange of the unregistered security for a

---

[1] Barclays also moved to dismiss the Complaint on all of the grounds set forth in the Financial Institutions' Joint Memorandum of Law in Support of Their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint (Instr. #130) ("Joint Memorandum"), and Barclays also joins the Financial Institution Defendants' Reply Memorandum in Support of Their Joint Motion to Dismiss the Third Amended Complaint, filed January 27, 2012 ("Joint Reply Memorandum").

registered security does *not* retroactively create § 11 liability for an underwriter that participated only in Rule 144A-exempt transactions." (Opp. 148 (emphasis added).) These concessions require dismissal of these claims against Barclays.

Silvercreek tries to support its Securities Act claims against Barclays by pointing to the Complaint's conclusory allegations about Barclays' alleged role in the private, *unregistered* offering. This misses the point entirely: Because it is undisputed that Barclays did not participate in the public offering, Barclays cannot be liable under the Securities Act.

Silvercreek's arguments about its TSA claims are equally flawed. Silvercreek argues that Barclays aided and abetted Enron's alleged violation of the TSA by "substantially" yet "indirect[ly]" participating in a transaction—the public offering—through its alleged activities related to the separate *private* offering. (Opp. 164-65.) The fact that Barclays had an alleged role in an earlier transaction that allegedly served as the "template" for the registered offering is plainly insufficient to plead that Barclays "substantially assisted" Enron in its public offering.

Silvercreek's statutory claims against Barclays should be dismissed. And for the reasons set forth in the Joint Memorandum and Joint Reply Memorandum, Silvercreek's other claims should be dismissed, as well.

## ARGUMENT

I.  **SILVERCREEK'S SECURITIES ACT CLAIM SHOULD BE DISMISSED BECAUSE BARCLAYS DID NOT PARTICIPATE IN THE REGISTERED ZERO COUPON NOTES OFFERING.**

As Silvercreek concedes, Section 11 of the Securities Act only provides a cause of action against an underwriter—*i.e.*, a person who "participates or has a direct or

indirect participation in" the "distribution of any security"—for material misstatements or omissions that appear in a registration statement for registered securities that are underwritten by that defendant. (Opp. 139, 143-44, 157-58; *see also* Mem. 6, 8 (same).) Silvercreek concedes (1) that Barclays did *not* sell securities in the public offering of the Zero Coupon Notes (Opp. 146 n.46), and (2) that Barclays was *not* included on the registration statement's list of "selling securityholders [who] intend to distribute the notes" (Opp. 146 (citing Fritsch Decl., Ex. B at 44-46 & Ex. E)). Nevertheless, almost in passing, Silvercreek argues that Barclays' alleged role in the earlier, private, *unregistered* offering, coupled with the registration statement's identification of Barclays as an initial purchaser in that earlier private offering, somehow can establish liability under Section 11. (Opp. 158-59.) This argument is meritless.

Silvercreek concedes that Section 11 liability cannot attach to a defendant like Barclays that was only involved as an "initial purchaser" in the Rule 144A private placement of unregistered securities that were later exchanged for registered securities, because the "subsequent exchange of the unregistered security for a registered security does not retroactively create § 11 liability for an underwriter that participated only in Rule 144A-exempt transactions."[2] (Opp. 148.) Thus, Silvercreek's exclusive reliance on Barclays' role in the private placements (Opp. 159) is insufficient to support a Section 11 claim. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 431-32

---

[2]  Indeed, under Rule 144A, a participant (like Barclays) that buys and sells securities in a Rule 144A private placement is not even an "underwriter" of those securities. 17 C.F.R. § 230.144A.

(S.D.N.Y. 2001) (holding defendant that was "heavily involved" in a private placement "as [an] initial purchaser[]" was not "liable as underwriter[] of the sale of registered securities" because it was not directly involved in the subsequent exchange of unregistered securities for registered securities); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 628 (S.D.N.Y. 2007) (to the same effect).

Unable to circumvent this bar, Silvercreek relies on *Harden* v. *Raffensperger, Hughes & Co.*, 65 F.3d 1392 (7th Cir. 1995), to contend that a defendant like Barclays can be liable under Section 11 even when that defendant did not participate in the distribution of registered securities. (Opp. 157-58.) *Harden* says no such thing. In that case, the Seventh Circuit permitted a Section 11 liability claim against a qualified independent underwriter ("QIU") who *voluntarily* and *explicitly* assumed the liabilities of an underwriter under Section 11 in a registered offering because, in accordance with rules promulgated by the National Association of Securities Dealers ("NASD"), the issuer could not use a non-independent affiliate as its underwriter without a QIU. 65 F.3d at 1400-01. Because the defendant played an essential role in the distribution of the registered securities, the Seventh Circuit found that its contractual underwriting role as QIU was "necessary to the distribution of . . . [the] securities." *Id*. at 1395, 1400-01.

As detailed in Barclays' opening brief (Mem. 9-10), and as the offering documents themselves make clear (Fritsch Decl., Ex. B at 44-45; Fritsch Decl., Ex. C at 40-41; Fritsch Decl., Ex. D at 43-46; Fritsch Decl., Exs. E-H), Barclays had no "essential" or "necessary" role with respect to the registered offering, and Silvercreek does not contend otherwise (*see* Opp. 144-46). Courts routinely reject attempts like Silvercreek's to create a limitless definition of underwriter that would include non-

statutory underwriting conduct. For example, in *Wyoming State Treasurer* v. *Moody's Investors Service, Inc. (In re Lehman Bros. Mortgage-Backed Sec. Litig.)*, 650 F.3d 167, 179-82 (2d Cir. 2011), the Second Circuit dismissed Section 11 claims against defendants who did not participate in the distribution of registered securities. Noting that the defendants did not "explicitly assum[e] the responsibilities of underwriters" pursuant to NASD rules—unlike the defendant in *Harden*—the Second Circuit held that "Congress did not intend for strict underwriter liability to extend to persons merely interested in a distribution by virtue of their provision of non-distribution services to an offeror . . . ." *Id*. at 179. Although an entity may become a statutory underwriter by indirectly participating in the distribution of a security (*see* Mem. 11 (citing 15 U.S.C. § 77b(a)(11)), the Second Circuit explained that Section 11 does not impose liability on those who are not involved in a public offering:

> Section 11 ensures accurate disclosures in registration statements by imposing *in terrorem* liability on a *limited list of persons*. To be sure, "direct or indirect participation" in underwriting subjects a person to strict liability. But the participation must be in the statutorily enumerated distributional activities, not in non-distributional activities that may facilitate the eventual distribution by others . . . . [T]he legislative history signals that § 11 was designed to impose its exacting standards regarding the provision of accurate and complete information *only* on the people (or entities) responsible for distributing securities to the public, that is, on those engaged in the public offering.

*Id*. at 181 (citations and quotations omitted) (emphasis added). Courts also routinely reject the QIU argument based on *Harden* that Silvercreek relies on here. *See In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (GEL), 2008 U.S. Dist. LEXIS 62543, at *9, *14-15 (S.D.N.Y. Aug. 14, 2008) (refusing to apply *Harden* to find Section 11 liability over a party that did not participate in the distribution of the security, as *Harden* is

limited to QIUs under NASD rules); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 03 MD 1529, 2007 U.S. Dist. LEXIS 66911, at *27-28 (S.D.N.Y. Sept. 7, 2007) (same).  Because Barclays is not alleged to have performed any "distributional activities" with respect to the registered Zero Coupon Notes offering (Mem. 9-10; Opp. 144-46), Silvercreek's Section 11 claims against Barclays should be dismissed.[3]

## II. SILVERCREEK'S TSA CLAIM SHOULD BE DISMISSED BECAUSE BARCLAYS DID NOT PROVIDE ANY ASSISTANCE WITH RESPECT TO THE REGISTERED ZERO COUPON NOTES OFFERING.

Silvercreek's conclusory allegations concerning Barclays' role in the unregistered securities offering also cannot save its TSA claims.  Silvercreek concedes that it can only establish a claim for aiding and abetting a violation of the TSA against a party that (among other things) provided "substantial assistance" in a public offering misstatement.  (Opp. 160-61.)  This standard can be met by showing, for example, that the defendant was "intimately" involved with the transaction by "supervis[ing] the preparation of the relevant sales proposals and agreements [and] then transmitt[ing] the proposals to plaintiff."  *Lane Hartman Ltd.* v. *P.R.O. Missions, Inc.*, No. Civ. A. 3:95-CV-0869-P, 1997 U.S. Dist. LEXIS 23067, at *18-19 (N.D. Tex. Aug. 5, 1997); *see also*

---

[3]   Barclays' opening brief also noted that the plain text of Section 11(e)(3) of the Securities Act—which limits an underwriter's liability to "the total price at which the securities underwritten by [it] and distributed to the public were offered"—shows that the Section 11 claims against Barclays should be dismissed because Barclays cannot be liable for securities it did not underwrite. (Mem. 11 n.7 (citing 15 U.S.C. § 77k(e)).)  Silvercreek's response, that Section 11 liability can attach to underwriters who did not directly sell securities (Opp. 158 n.57), entirely misses the point:  Barclays cannot be responsible for any of Silvercreek's alleged damages because Barclays was not involved in the distribution of *any* registered securities to the public.

*Crescendo Invs., Inc*. v. *Brice*, 61 S.W.3d 465, 473 (Tex. App.-San Antonio 2001, pet. denied) (sustaining directed verdict finding lack of "substantial assistance" because plaintiffs failed to show that the defendants participated in the actual business transaction that allegedly caused them harm).[4]

Although it has no facts to show that Barclays had any role in the registered Zero Coupon Notes offering (*see* Opp. 144-46 & n.46), Silvercreek argues that Barclays substantially assisted Enron with that offering because, for instance, the unregistered offering memorandum on which Barclays Capital Inc.'s name appeared "serv[ed] as the template for the [registered] prospectus, played the same role as the prospectus in assisting in the sale of the Zero [Coupon] Notes, and included the same misleading financials." (Opp. 165.) Rather than citing cases to support this remarkable proposition, Silvercreek argues that the TSA's use of the word "indirect" permits a plaintiff to bring an aiding and abetting claim against a defendant, even if that defendant

---

[4] Silvercreek argues that Barclays is attempting to create a new, more limited standard of aiding and abetting liability by both reading words into and out of the TSA. (Opp. 163.) That is wrong. Rather, Barclays cited in its opening brief to this Court's prior holdings concerning the elements of aiding and abetting liability (*see* Mem. 12 (quoting *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 235 F. Supp. 2d 549, 568 (S.D. Tex. 2002))), and offers examples of situations in which courts have found substantial assistance or have declined to do so.

did not have *any* role in the offering of registered securities. (Opp. 163-65 (reciting allegations regarding Barclays' role with respect to the unregistered offering.))[5]

These types of allegations are plainly insufficient to state a claim under the TSA. Where the alleged primary violations consist of misrepresentations in a document (here, the registration statements), the defendant "must be alleged to have given substantial assistance to the making and dissemination of that document." *Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007); (*see also* Joint Reply Memorandum at 13-15, 25-27). Similarly, because the decision to impose aiding and abetting liability for a securities law claim "depends on the importance of one's personal contribution to the transaction," *Prince* v. *Brydon*, 764 P.2d 1370, 1371 (Or. 1988), the fact that Barclays is not alleged to have had *any* direct *or* indirect role with respect to the registered Zero Coupon Notes offering bars Silvercreek's TSA claim.

---

[5] The three cases cited by Silvercreek in support of its argument that a defendant could "indirect[ly]" provide "substantial assistance" (Opp. 164) are irrelevant to the question of whether a defendant could somehow provide "substantial assistance" with a registered offering in which it is not alleged to have played *any* role (Mem. 8-10).

## CONCLUSION

For the reasons set forth in the Financial Institutions' joint memoranda and Barclays' memoranda, Silvercreek's claims against Barclays should be dismissed with prejudice.

Dated: January 27, 2012

Respectfully submitted,

/s/ David H. Braff
David H. Braff
Marc De Leeuw
Jeffrey T. Scott
Joshua Fritsch
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000
Facsimile:   (212) 558-3588

Barry Abrams
(Attorney-in-Charge)
Southern District I.D. No. 2138
State Bar No. 00822700
BLANK ROME LLP
700 Louisiana, Suite 4000
Houston, TX  77002
Telephone:  (713) 228-6601
Facsimile:   (713) 228-6605

*Attorneys for Defendants Barclays PLC and Barclays Capital Inc.*

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on January 27, 2012, which caused an electronic copy of this document to be served on all filing users who have appeared in this matter.

       /s/ Barry Abrams
       Barry Abrams