UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | § § § § § | |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated, | § § § | Civil Action No. H-01-3624 **(Consolidated)** |
| Plaintiffs, | § § | |
| vs. | § § | |
| ENRON CORP., et al., | § § | |
| Defendants. | § § § | |
| This Document Relates to: | § § | |
| SILVERCREEK MANAGEMENT, INC., et al. | § § | Civil Action No. H-03-0815 **(Coordinated)** |
| Plaintiffs, | § § | |
| vs. | § § | |
| CITIGROUP, INC., et al. | § § § | |
| Defendants. | § § § | |

**CREDIT SUISSE'S SEPARATE REPLY MEMORANDUM IN FURTHER
SUPPORT OF THE FINANCIAL INSTITUTIONS' JOINT MOTION TO
DISMISS THE SILVERCREEK PLAINTIFFS' THIRD AMENDED
COMPLAINT (DOCKET NO. 121)**

**Table of Contents**

Table of Contents.................................................................................................... i

Table of Authorities ............................................................................................... ii

Citation Conventions ..............................................................................................v

Argument ................................................................................................................1

I.      The Silvercreek Plaintiffs' Section 11 Claim (Count Six) Should
        Be Dismissed Because They Fail Adequately To Plead that Credit
        Suisse Was a Statutory Underwriter of the Zero Coupon Notes. ...........................1

II.     The Silvercreek Plaintiffs' New Section 12(a)(2) Claim (Count
        Eight) Should Be Dismissed Because the Statute of Repose Has
        Lapsed and Because the Silvercreek Plaintiffs' Allegations Fail To
        State a Claim. ..........................................................................................5

        A.      The Silvercreek Plaintiffs' New Section 12(a)(2) Claim Is
                Barred by the Statute of Repose.......................................................5

        B.      The Silvercreek Plaintiffs Fail Adequately To Plead Their
                New Section 12(a)(2) Claim, Which Sounds in Fraud, with
                the Requisite Particularity........................................................11

Conclusion ..........................................................................................................13

## Table of Authorities

**Page(s)**

**Cases**

*American Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974)......................................................................................6, 7, 9

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.,*
  419 F.3d 355 (5th Cir. 2005) ......................................................................8, 9, 10

*Byrnes v. Faulkner, Dawkins & Sullivan,*
  550 F.2d 1303 (2d Cir. 1977)...............................................................................3

*Calderon v. Presidio Valley Farmers Ass'n,*
  863 F.2d 384 (5th Cir. 1989) ................................................................................9

*Caviness v. Derand Res. Corp.,*
  983 F.2d 1295 (4th Cir. 1993) ..........................................................................5, 7

*Collmer v. U.S. Liquids, Inc.,*
  268 F. Supp. 2d 718 (S.D. Tex. 2003) ................................................................12

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.,*
  770 F. Supp. 2d 618 (S.D.N.Y. 2011).........................................................5, 6, 7, 9

*In re Boesky Sec. Litig.,*
  882 F. Supp. 1371 (S.D.N.Y. 1995).....................................................................10

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.* ("*In re Enron Pub. Emps.' Ret. Sys.*"),
  465 F. Supp. 2d 687, 715-16 (S.D. Tex. 2006).................................................6, 10

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.* ("*Lamkin*"),
  Civ. A. Nos. MDL 1446, H-01-3624, H-01-3913, H-02-0851,
  H-02-851, 2003 U.S. Dist. LEXIS 25037 (S.D. Tex. Nov. 13, 2003).........................2

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.* ("*Regents I*"),
  235 F. Supp. 2d 549 (S.D. Tex. 2002) ...................................................................2

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.* ("*Regents II*"),
  529 F. Supp. 2d 644 (S.D. Tex. 2006) ................................................................8, 9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.* ("*Silvercreek I*"),
  Civ. A. Nos. MDL 1466, H-01-3264, H-02-3185, 2003 WL 23305555
  (S.D. Tex. Dec. 11, 2003)....................................................................................2

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.* ("*Walker v. Arthur Andersen, LLP*"),
   Civ. A. Nos. MDL 1446, H-01-3624, H-03-2345, 2011 WL 3516292
   (S.D. Tex. Aug. 11, 2011)...........................................................................11

*In re Hanford Nuclear Reservation Litig.*,
   534 F.3d 986 (9th Cir. 2007) ......................................................................8

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
   650 F.3d 167 (2d Cir. 2011)........................................................................1

*In re Lehman Bros. Sec. & ERISA Litig.*,
   799 F. Supp. 2d 258 (S.D.N.Y. 2011)................................................6, 9, 10

*In re Sharps Run Assocs., L.P.*,
   157 B.R. 766 (D.N.J. 1993) .......................................................................10

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006).......................................................................12

*In re WorldCom, Inc. Sec. Litig.* ("*In re WorldCom I*"),
   308 F. Supp. 2d 338 (S.D.N.Y. 2004)..........................................................1

*In re WorldCom, Inc. Sec. Litig.* ("*In re WorldCom II*"),
   496 F.3d 245 (2d Cir. 2007).....................................................................7, 8

*Joseph v. Wiles*,
   223 F.3d 1155 (10th Cir. 2000) ..................................................................9

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350 (1991).................................................................................6, 9

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
   238 F.3d 363 (5th Cir. 2001) ................................................................11, 12

*McFarland v. Memorex Corp.*,
   493 F. Supp. 631 (N.D. Cal. 1980) ..........................................................3, 4

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) .....................................................................11

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch*,
   714 F. Supp. 2d 475 (S.D.N.Y. 2010).......................................................1, 4

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..................................................................11, 12

*SEC v. Kern*,
    425 F.3d 143 (2d Cir. 2005).............................................................2, 3

*SEC v. Lybrand*,
    200 F. Supp. 2d 384 (S.D.N.Y. 2002)......................................2, 3

*SEC v. N. Am. Research & Dev. Corp.*,
    280 F. Supp. 106 (S.D.N.Y. 1968)...............................................1

*State Farm Mut. Auto. Ins. Co. v. Boellstorff*,
    540 F.3d 1223 (10th Cir. 2008) ....................................................8

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
    413 F.3d 553 (6th Cir. 2005) ....................................................6, 7

**Statutes & Rules**

Section 2 of the Securities Act, 15 U.S.C. § 77b ................................1

Section 11 of the Securities Act, 15 U.S.C. § 77k .................................. passim

Section 12 of the Securities Act, 15 U.S.C. § 77l.................................. passim

Section 13 of the Securities Act, 15 U.S.C. § 77m...............................5, 6, 9

Rules Enabling Act, 28 U.S.C. § 2072(b).........................................6, 9

Fed. R. Civ. P. 8....................................................................12

Fed. R. Civ. P. 9(b) ...............................................................11

Fed. R. Civ. P. 15.....................................................................9

Fed. R. Civ. P. 23...................................................................6, 7

## Citation Conventions

### Entities

"Financial Institutions":  Defendants JPMorgan Chase & Co., J.P. Morgan Securities Inc. (n/k/a J.P. Morgan Securities LLC), Merrill Lynch & Co., Inc., Deutsche Bank Alex. Brown Inc., Deutsche Bank AG (n/k/a/ Deutsche Bank Securities Inc.), Barclays Capital Inc., Barclays plc, Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation)

"Barclays":  Barclays Capital Inc. and Barclays plc

"Credit Suisse":  Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation)

"Deutsche Bank":  Deutsche Bank Alex. Brown Inc. (n/k/a/ Deutsche Bank Securities Inc.) and Deutsche Bank AG

"JPMorgan":  JPMorgan Chase & Co. and J.P. Morgan Securities Inc. (n/k/a J.P. Morgan Securities LLC)

"Merrill Lynch":  Merrill Lynch & Co., Inc.

"Silvercreek Plaintiffs":  Silvercreek Management, Inc., Silvercreek Limited Partnership, Silvercreek II Limited, OIP Limited, and the Pebble Limited Partnership

### Pleadings and Court Submissions

"TAC":  Third Amended Complaint, dated August 11, 2011 (Docket No. 121)

"Joint Memorandum" or "Joint Mem.":  The Financial Institutions' Joint Memorandum of Law in Support of Their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint, dated September 27, 2011 (Docket No. 130)

"CSFB Memorandum" or "CSFB Mem.":  Credit Suisse's Separate Memorandum In Support of the Financial Institutions' Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint, dated September 28, 2011 (Docket No. 131)

"Opposition Memorandum" or Opp. Mem.":  The Silvercreek Plaintiffs' Corrected Memorandum in Opposition to the Financial Institutions' Motion to Dismiss, dated January 3, 2012 (Docket No. 142)

"Joint Reply Memorandum" or "Joint Reply Mem.":  The Financial Institutions' Joint Reply Memorandum of Law in Further Support of Their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint, dated January 27, 2011

Credit Suisse respectfully submits this separate reply memorandum in further support of the Financial Institutions' Joint Motion To Dismiss the Silvercreek Plaintiffs' Third Amended Complaint to address unique issues regarding the Section 11 and Section 12(a)(2) claims against Credit Suisse.

## Argument

## I.   THE SILVERCREEK PLAINTIFFS' SECTION 11 CLAIM (COUNT SIX) SHOULD BE DISMISSED BECAUSE THEY FAIL ADEQUATELY TO PLEAD THAT CREDIT SUISSE WAS A STATUTORY UNDERWRITER OF THE ZERO COUPON NOTES.

"[T]o qualify as an underwriter . . . a person must participate, directly or indirectly, in purchasing securities from an issuer with a view to distribution, in offering or selling securities for an issuer in connection with a distribution, or in the underwriting of such an offering."  *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 177 (2d Cir. 2011) (citing *In re WorldCom*, *Inc. Sec. Litig.* ("*In re WorldCom I*"), 308 F. Supp. 2d 338, 344 (S.D.N.Y. 2004); *see* 15 U.S.C. § 77b(a)(11)).  The Silvercreek Plaintiffs fail to allege that Credit Suisse qualifies as a statutory underwriter under this standard and thus, their Section 11 claim should be dismissed.

*First*, the Silvercreek Plaintiffs do not—and cannot—allege that Credit Suisse made a purchase from Enron, the issuer of the Zero Coupon Notes (the "Zero Notes").  In order to qualify as an underwriter, the participation in the offering necessarily includes "*purchasing securities from an issuer* with a view to their resale". *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch*, 714 F. Supp. 2d 475, 482 (S.D.N.Y. 2010) (emphasis added); *see also SEC v. N. Am. Research & Dev. Corp.*, 280 F. Supp. 106, 122 (S.D.N.Y. 1968) (purchase from an issuer, or a control person, is a necessary element of underwriter status).  Here, the Silvercreek Plaintiffs concede that Credit Suisse

did not purchase the Zero Notes from Enron, the issuer.  (Opp. Mem. 139 n. 39; 144 n.

43; 145 n. 44.)  This fact alone is fatal to their claim.[1]

        The Silvercreek Plaintiffs' argument that Credit Suisse "'operate[d] as [a]

conduit[] for securities being placed into the hands of the investing public'" (Opp. Mem.

157 (quoting *SEC v. Lybrand*, 200 F. Supp. 2d 384, 393 (S.D.N.Y. 2002)) is wrong, and

their reliance on *SEC v. Lybrand*, 200 F. Supp. 2d at 384, and a subsequent appellate

decision, *SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005), is misplaced.  In those cases, the

defendants acquired the securities directly from the issuers and sold them for the issuers.

*Kern*, 425 F.3d at 146, 149; *Lybrand*, 200 F. Supp. 2d at 387-90.  In fact, there was no

dispute that the defendants in those cases entirely controlled the issuers and the process

by which the issuers' shares were sold.  *Id.*  Here, by contrast, Credit Suisse is not alleged

---

[1] The Silvercreek Plaintiffs do not dispute the fact that in *In re Enron Corporation Securities, Derivative & "ERISA" Litigation* ("*Silvercreek I*"), Civ. A. Nos. MDL 1466, H-01-3264, H-02-3185, 2003 WL 23305555, at *2, *13 n.19 (S.D. Tex. Dec. 11, 2003), in concluding that certain defendants were statutory underwriters, this Court relied exclusively and without further analysis on the Court's prior opinion in *In re Enron Corporation Securities, Derivative & "ERISA" Litigation* ("*Lamkin*"), Civ. A. Nos. MDL 1446, H-01-3624, H-01-3913, H-02-0851, H-02-851, 2003 U.S. Dist. LEXIS 25037, at *33, *44 (S.D. Tex. Nov. 13, 2003).  In *Lamkin*, however, the Court placed significant weight on the defendant's role as the "exclusive broker" for the issuer in determining that the plaintiffs had pleaded sufficient facts to show that defendant was an underwriter.  2003 U.S. Dist. LEXIS 25037, at *44.  Thus, *Lamkin*, and by extension, *Silvercreek I*, are not applicable here where there are no allegations that Credit Suisse acted as an "exclusive broker" or had any other similar relationship with Enron.  Similarly, although this Court declined to dismiss Section 11 claims related to the Zero Notes in *In re Enron Corporation Securities, Derivative & "ERISA" Litigation* ("*Regents I*"), 235 F. Supp. 2d 549, 707 (S.D. Tex. 2002), it does not appear that the Court considered the substantive limitations on underwriter liability, or the role of Credit Suisse in the purchase and sale of the Zero Notes.  *Id.* (providing only a brief discussion of the Section 11 claims, and making no distinction, for example, between banks that signed registration statements and those that did not, and those that purchased directly from Enron and those that did not).

to have had any control over Enron or its issuance of the Zero Notes, to have acquired the Notes from Enron, or to have sold the Notes on Enron's behalf.[2]

      *Second*, there are no allegations that Credit Suisse participated in any way in the preparation of the Registration Statement of the Zero Notes.  *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 646-47 (N.D. Cal. 1980) ("[T]hose who have control over the statements made in a registration statement are made liable for false statements or omissions"); (*see* CSFB Mem. 3-4).  The Silvercreek Plaintiffs do not—and cannot— allege that Credit Suisse participated in the drafting or dissemination of the Zero Notes, the Prospectus or the Registration Statement.  Their unsupported assertion that "Credit Suisse was 'given the right to participate in the preparation of the registration statement and the prospectus included therein . . .'" (Opp. Mem. 156-57 n.56) is not sufficient to allege that Credit Suisse in fact participated in—much less had control over—statements made in the Zero Notes Registration Statement.  An alleged "right to participate" does not constitute control over statements made in a registration statement for the purpose of triggering Section 11 liability.  *See McFarland*, 493 F. Supp. at 646-647 (dismissing

---

[2] Moreover, in *Lybrand*, 200 F. Supp. 2d at 384, and *Kern*, 425 F.3d at 143, and in *Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303 (2d Cir. 1977), another case on which the Silvercreek Plaintiffs rely (Opp. Mem. at 157), the courts were analyzing Section 5 of the Securities Act, which addresses the sale of unregistered securities and prospectus delivery requirements, *not* Section 11, which is what is at issue here.  At least one court has declined to apply these Section 5 decisions when deciding whether a defendant was an underwriter in the Section 11 context.  *See McFarland v. Memorex Corp.*, 493 F. Supp. 631, 646-47 (N.D. Cal. 1980) (distinguishing Section 5 cases and explicitly rejecting application of *Byrnes*; the court was "unable to find any authority supporting plaintiff's theory that persons playing a role comparable to the [defendants] are underwriters for Section 11 purposes . . . .  [T]he prospectus delivery requirements of the 1933 Act were at issue in *Byrnes*, not liability for misleading statements in a registration statement").  The Silvercreek Plaintiffs cite no support in the case law for equating Section 5 with Section 11.

Section 11 claim because there was no allegation that the defendants had control over the registration statement); *see also Pub. Emps.' Ret. Sys. of Miss.*, 714 F. Supp. 2d at 482 (the conclusory allegation, without more, that defendant "participated in the drafting and dissemination" of offering materials is insufficient to state a claim).

*Third*, there are no allegations that Credit Suisse performed or was compensated for any underwriting activities with respect to the Zero Notes offering. The Silvercreek Plaintiffs do not allege that Credit Suisse received any commission normally due to an entity deemed an underwriter, nor was Credit Suisse included on any compensation table contained in the Registration Statement for the Zero Notes. (*See* CSFB Mem. 5-6.) The fact that Credit Suisse was not compensated as an underwriter weighs heavily against a finding that Credit Suisse was an underwriter under Section 11. *See McFarland*, 493 F. Supp. at 645 ("Because the warrantholders . . . received no corresponding reward, it would be anomalous to include them within the definition of underwriter"). Further, the Silvercreek Plaintiffs do not—and cannot—allege that Credit Suisse performed any traditional underwriting activities in connection with the Zero Notes offering. Credit Suisse's only role with respect to the Zero Notes was as a mere institutional investor—Credit Suisse was under no obligation to take any securities or distribute them on Enron's behalf. (*See* CSFB Mem. 5-6.)

Credit Suisse cannot be deemed an underwriter of the Zero Notes because it did not purchase the Zero Notes from Enron, did not participate in the preparation of the Registration Statement, and did not perform any traditional underwriting activities. The Silvercreek Plaintiffs thus fail to state a Section 11 claim against Credit Suisse.

## II.   THE SILVERCREEK PLAINTIFFS' NEW SECTION 12(a)(2) CLAIM (COUNT EIGHT) SHOULD BE DISMISSED BECAUSE THE STATUTE OF REPOSE HAS LAPSED AND BECAUSE THE SILVERCREEK PLAINTIFFS' ALLEGATIONS FAIL TO STATE A CLAIM.

### A.   The Silvercreek Plaintiffs' New Section 12(a)(2) Claim Is Barred by the Statute of Repose.

The Securities Act clearly and unequivocally establishes a three-year statute of repose that extinguishes any claims not brought within that period. *See* Section 13 of the Securities Act, 15 U.S.C. § 77m ("*In no event* shall any such action be brought to enforce a liability created . . . under [Section 12(a)(2)] of this title more than three years after the sale [of the security]" (emphasis added)). The Silvercreek Plaintiffs do not dispute that the three-year statute of repose applies and that their Section 12(a)(2) claim—first filed against Credit Suisse on August 11, 2011—is not timely unless they can take advantage of equitable tolling or relation back principles. (Opp. Mem. 175-85.) Those principles, however, do not apply to salvage extinguished claims under Section 13. "Statutes of repose aim to create certainty." *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 622 (S.D.N.Y. 2011); *see also Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1300 n.7 (4th Cir. 1993) ("A statute of repose runs from a fixed date readily determinable by the defendant . . . . Using a fixed date easily determined by the defendant allows for 'repose' from the cause of action and serves the need for finality in certain financial and professional dealings."). The Silvercreek Plaintiffs' reliance on principles that apply to statutes of *limitations* ignores the substantive difference between statutes of limitations and statutes of *repose*. *See Footbridge*, 770 F. Supp. 2d at 622 ("While statutes of limitations bear on the availability of remedies, statutes of repose affect the availability of the underlying right." (internal quotations omitted)). The Silvercreek Plaintiffs' Section 12(a)(2) claim is untimely and should be dismissed.

*First*, the Silvercreek Plaintiffs cannot avail themselves of tolling to revive their extinguished Section 12(a)(2) claim.  The plain language of Section 13 makes clear that tolling is not available to resuscitate claims that have extinguished as a result of a statute of repose:  "[i]n no event" may a Section 12(a)(2) claim be brought "more than three years after the sale".  15 U.S.C. § 77m.  No legal tolling is available—"[t]olling is not provided for in the text of the '33 Act or any governing statute".  *Footbridge*, 770 F. Supp. 2d at 626.  Moreover, many courts have held that equitable tolling, including the class action tolling doctrine established in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974),[3] does not apply to extend the statute of repose in the Securities Act. *E.g.*, *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (the Securities Act's and the Exchange Act's statute of repose is "inconsistent with tolling"); *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 310 (S.D.N.Y. 2011) ("neither *American Pipe* nor any other form of tolling may be invoked to avoid the three year statute of repose set forth in Section 13 of the Securities Act of 1933").

Moreover, *American Pipe* tolling has no application to the Silvercreek Plaintiffs because they first commenced this lawsuit (without a Section 12(a)(2) claim) nearly four years before class certification was granted by this Court in *Newby*.  *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.* ("*In re Enron Pub. Emps.' Ret. Sys.*"), 465 F. Supp. 2d 687, 715-16 (S.D. Tex. 2006); *see also Wyser-Pratte Mgmt. Co. v.*

---

[3] *American Pipe* is a form of equitable tolling, not legal tolling, because it is "a judicially-created rule premised on 'traditional equitable considerations'".  *Footbridge*, 770 F. Supp. 2d at 626.  The fact that *American Pipe* tolling is derived from Federal Rule of Civil Procedure 23 does not transform it into legal tolling.  In any event, even if *American Pipe* tolling were considered legal tolling, it still could not apply to amend Section 13's statute of repose because "pursuant to the Rules Enabling Act, Rule 23 could not trump a statutory enactment."  *Id.*

*Telxon Corp.*, 413 F.3d 553, 568-69 (6th Cir. 2005) (where a plaintiff filed an independent action in advance of a court's determination of a class certification motion, the plaintiff was not entitled to *American Pipe* tolling of the statute of limitations).  The Silvercreek Plaintiffs do not even address *Wyser-Pratte*, which conclusively bars the application of *American Pipe* to early filers.  Instead, the Silvercreek Plaintiffs rely on policy arguments for the proposition that tolling serves the purposes of Rule 23 by protecting class members who otherwise would be forced to file individual suits or give up their right to sue individually.  (Opp. Mem. 181-83.)  But that policy simply does not apply to those plaintiffs—such as the Silvercreek Plaintiffs—who opted out long before a class certification determination was made, never relying on the pendency of the putative class action.  *See Wyser-Pratte*, 413 F.3d at 569 ("The purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification").  In any event, policy considerations cannot trump the application of a statute of repose.  *See, e.g.*, *Footbridge*, 770 F. Supp. 2d at 627 ("[M]any of the policy considerations present in American Pipe would support tolling of a statute of repose.  But the issue presented is not one of policy but of enforcement of the statute as written. Lawmakers are free to adjust the repose period as they have in the past."); *Caviness*, 983 F.2d at 1301 ("[T]o adopt an interpretation that tolling principles should be applied to extend the three year period of § 13 would require us to ignore the plain meaning of the language that says 'in no event' may an action be filed more than three years after the sale and defeat the very purpose of a statute of repose.").

The Silvercreek Plaintiffs' reliance on cases applying *American Pipe* tolling to early filers (Opp. Mem. 181-82 (citing *In re WorldCom, Inc. Sec. Litig.* ("*In re*

7

*WorldCom II*"), 496 F.3d 245, 256 (2d Cir. 2007); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1008 (9th Cir. 2007); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1224 (10th Cir. 2008))) is wholly misplaced.  Each of those cases addressed tolling to a statute of *limitations*—not a statute of *repose*.  *In re WorldCom II*, 496 F.3d at 246; *In re Hanford Nuclear Reservation Litig.*, 534 F.3d at 1009; *Boellstorff*, 540 F.3d at 1231-32.  Indeed, each case applied tolling, in light of the notice function of the statute of limitations, on the ground that each defendant was sufficiently on notice of the claims against them by virtue of the previously filed class action.  *In re WorldCom II*, 496 F.3d at 253 ("Statutes of limitations thus guard against unfair surprises that result from the resurrection of stale claims.  The need to put an adversary on notice to defend against a claim is served when a class action is brought identifying both the nature of the claim and the plaintiffs who may participate in the judgment."); *see also In re Hanford*, 534 F.3d at 1009; *Boellstorff*, 540 F.3d at 1233.  As the Fifth Circuit has held, the notice function of statutes of limitations simply does not apply to statutes of repose, which provide affirmative substantive rights to defendants and provide finality.  *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 363 (5th Cir. 2005).  The equitable arguments raised by the Silvercreek Plaintiffs therefore are not relevant to a statute of repose, which creates a right of the defendant that cannot be abrogated by notions of equity.  *Id.* at 362-363.[4]

---

[4] This Court's decision in *In re Enron Corporation Securities, Derivative & "ERISA" Litigation* ("*Regents II*"), 529 F. Supp. 2d 644, 708 (S.D. Tex. 2006) (Opp. Mem. 179), should not be followed here for two reasons.  *First*, the Court's statement that "the filing of a class action under Fed. R. Civ. P. 23 legally tolls any applicable statute of limitations or statute of repose", 529 F. Supp. 2d at 708, is at odds with the weight of recent authority, discussed above, that holds that tolling—whether legal or equitable—does not apply to

*Second*, the Silvercreek Plaintiffs cannot avail themselves of the "relation back" doctrine of Federal Rule of Civil Procedure 15(c) to save their extinguished claim. Relation back under Rule 15(c)(1) specifically addresses the application of the rule to statutes of limitations.  "An amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable *statute of limitations* allows relation back."  Fed. R. Civ. P. 15(c)(1)(A) (emphasis added).  Rule 15(c)(1) is entirely silent as to statutes of repose.  The familiar common law rule of statutory interpretation, *expressio unius est exclusion alterius*, leads to the conclusion that the drafters of Rule 15(c)(1) did not contemplate the application of the rule to statutes of repose.  Nor could they have, since doing so would conflict with the Rules Enabling Act, 28 U.S.C. § 2072(b).  *Footbridge*, 770 F. Supp. 2d at 626.

The Fifth Circuit similarly has held that relation back does not apply to statutes of repose.  *Burlington*, 419 F. 3d at 362 (holding that a relation back statute did not apply to a statute of repose where the statute specified application only to statutes of

---

Section 13's statute of repose.  *See e.g.*, *Footbridge*, 770 F. Supp. 2d at 626 (holding that legal tolling is not provided for in the Securities Act, and that *American Pipe* tolling is equitable in nature and is not applicable to Section 13); *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d at 310 (same); *see generally Lampf*, 501 U.S. at 362-63 (the Securities Act's and the Exchange Act's statute of repose is "inconsistent with tolling"). *Second*, *Regents II* is distinguishable.  *Regents II* involved prospective intervenors who had yet to file a complaint during the period pending resolution of a class certification motion.  *Regents II*, 529 F. Supp. 2d at 661.  Likewise, the cases on which the Court relied in *Regents II* in applying *American Pipe* tolling also involved plaintiffs who filed their complaints *after* the district court's resolution of the class plaintiffs' certification motion. *Id.* at 708 (citing *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000); *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384 (5th Cir. 1989)).  The policy considerations behind *American Pipe* tolling that were present in *Regents II* are inapplicable to the Silvercreek Plaintiffs, who are early filers who did not wait for the class certification motion to be resolved in *Newby* before bringing their claims and never purported to rely on the pendency of the class action to preserve their claims.

limitation); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d at 310

("[P]laintiffs here cannot avoid the statute of repose on a 'relation back' theory . . .

because the statute of repose by its terms allows no exceptions.").  The Silvercreek

Plaintiffs do not address *Burlington* in their opposition brief.  In support of their

argument that the relation back doctrine does not conflict with the statute of repose, the

Silvercreek Plaintiffs again cite inapposite cases.  (Opp. Mem. 175-76 (citing *In re Enron

Pub. Emps.' Ret. Sys.*, 465 F. Supp. 2d at 763; *In re Sharps Run Assocs., L.P.*, 157 B.R.

766 (D.N.J. 1993); *In re Boesky Sec. Litig.*, 882 F. Supp. 1371 (S.D.N.Y. 1995)).)  The

citation to *In re Enron Public Employees' Retirement System* is puzzling given that the

Court there considered relation back in the context of a statute of limitations—not a

statute of repose—and, in any event, found that relation back was not available.  465 F.

Supp. 2d at 722-23.  Similarly, the statute in question in *In re Sharps Run Associates* was

not a statute of repose but rather, as the court clearly recognized, a statute of limitations.

157 B.R. at 783 ("We do not agree that Section 46(a) is a statute of repose").  *In re

Boesky* incorrectly held that a statute of repose did not extinguish liability, but merely

extinguished the plaintiff's remedy, such that relation back to a timely-filed complaint

was permissible.  882 F. Supp. at 1381.  This non-binding decision is flatly contradicted

by binding precedent from the Fifth Circuit.  *Burlington*, 419 F.3d at 363 ("with the

expiration of the period of repose, the putative cause of action evanesces; life cannot

thereafter be breathed back into it.").

       Moreover, the Silvercreek Plaintiffs do not even attempt to explain their

multi-year delay in asserting the Section 12(a)(2) claim against Credit Suisse.  The

Silvercreek Plaintiffs were aware of the facts now pleaded in the Third Amended

Complaint years before their recent filing. They could have pleaded a Section 12(a)(2) cause of action within the statute of repose; they simply failed to do so. Their notions of equity are therefore not only irrelevant as a matter of law but without factual support.

      **B.**    **The Silvercreek Plaintiffs Fail Adequately To Plead Their New Section 12(a)(2) Claim, Which Sounds in Fraud, with the Requisite Particularity.**

        The Silvercreek Plaintiffs' new Section 12(a)(2) claim not only is untimely, but fails to state a claim. The conclusory allegations of fraud contained in the Third Amended Complaint are of the type that repeatedly have been held insufficient under Rule 9(b). Although fraud is not normally an element of a claim under Section 12(a)(2) of the Securities Act, the case law is clear that plaintiffs are held to the heightened Rule 9(b) pleading standard where their claims fundamentally sound in fraud. *See, e.g.*, *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 367 (5th Cir. 2001) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994)); *see generally In re Enron Corp. Sec., Derivative & "ERISA" Litig.* ("*Walker v. Arthur Andersen, LLP*"), Civ. A. Nos. MDL 1446, H-01-3624, H-03-2345, 2011 WL 3516292, at *6 (S.D. Tex. Aug. 11, 2011) (Rule 9(b) applies to a negligence claim "where the factual allegations underlying it and a fraud claim are the same"). Plaintiffs cannot avoid the requirements of Rule 9(b) by pointing to the label used in the pleading; the character of the underlying allegations is what counts. *See, e.g.*, *Rombach v. Chang,* 355 F.3d 164, 172 (2d Cir. 2004).

        Merely disavowing fraud allegations that would trigger the Rule 9(b) requirements is ineffective where plaintiffs make little effort to distinguish their fraud claims from their other claims. *Id.* Here, the Silvercreek Plaintiffs cannot, and do not, distinguish their fraud claims from their Section 12(a)(2) claim; both rely on the same insufficiently pleaded allegations related to allegedly false and misleading statements in

11

the Registration Statement for the Zero Notes.  As discussed in the Joint Reply

Memorandum, the Silvercreek Plaintiffs' reliance on *Lone Star*, 238 F.3d at 369 (Opp.

Mem. 174) to support their argument for application of Rule 8 is misplaced.  (Joint Reply

Mem. Part V.)  The *Lone Star* plaintiffs pleaded wholly separate negligence claims

against certain defendants against whom they asserted no fraud claims.  *See* Brief for

Appellant at 3-4, *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 2000 WL 33993292, at

*3-4 (5th Cir. filed Apr. 11, 2001) (explaining that all allegations of fraud came after, and

were distinct from, the allegations made in support of the Section 11 claim).[5]  Where, as

here, allegations of fraud permeate the entire complaint, the Silvercreek Plaintiffs are

subject to Rule 9(b)'s heightened pleading standard.  *Rombach*, 355 F.3d at 172; *cf. Lone

Star*, 238 F.3d at 367.  Their Section 12(a)(2) claim clearly is not independent of their

fraud claims, as demonstrated by the fact that the Silvercreek Plaintiffs added this claim

as an afterthought nine years after they filed their original complaint alleging fraud.  The

Silvercreek Plaintiffs' attempt to disclaim hundreds of paragraphs of fraud allegations

with just two sentences (*see* TAC ¶¶ 901, 902), is not sufficient under these

circumstances.  (*See* Joint Reply Mem. Part V.)

   For the reasons discussed in the Joint Memorandum, the Joint Reply

Memorandum, and the CSFB Memorandum (Joint Mem. Part V; Joint Reply Mem. Part

V; CSFB Mem. 10-11), the Silvercreek Plaintiffs fail to plead their Section 12(a)(2)

---

[5] The Silvercreek Plaintiffs' reliance on this Court's decision in *Collmer v. U.S.
Liquids, Inc.*, 268 F. Supp. 2d 718 (S.D. Tex. 2003) (Opp. Mem. 174), also is misplaced.
As in *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006), and in *Lone
Star*, 238 F.3d at 363, the *Collmer* plaintiffs pleaded their Section 11 and Section 12(a)(2)
claims (Counts I and II, respectively) before their fraud claim (Count III).  *Collmer*, 268
F. Supp. 2d at 724-27.  Here, the Silvercreek Plaintiffs' allegations relating to fraud and
allegations relating to the Securities Act claims are commingled and indistinguishable.

claim with requisite particularity, because they do not allege any specific facts showing

fraudulent intent or scienter on the part of Credit Suisse.  The claim should be dismissed.

### Conclusion

For the reasons stated above and in the Financial Institutions' Joint

Memorandum of Law and Joint Reply Memorandum and the CSFB Memorandum, the

Silvercreek Plaintiffs' Third Amended Complaint should be dismissed in its entirety, with

prejudice.

Dated:  January 27, 2012

Respectfully submitted,

By:   /s/ Lawrence D. Finder
   Lawrence D. Finder
   Texas Bar No. 07007200
   Odean L. Volker
   Texas Bar No. 20607715
   HAYNES AND BOONE, LLP
   1 Houston Center
   1221 McKinney, Suite 2100
   Houston, TX 77002
   Telephone:  (713) 547-2000
   Facsimile:  (713) 547-2600

   Richard W. Clary
   Julie A. North
   Darin P. McAtee
   CRAVATH, SWAINE & MOORE LLP
   Worldwide Plaza
   825 Eighth Avenue
   New York, NY 10019-7475
   Telephone:  (212) 474-1000
   Facsimile:  (212) 474-3700

   ATTORNEYS FOR DEFENDANTS CREDIT
   SUISSE FIRST BOSTON (USA), INC. (N/K/A
   CREDIT SUISSE (USA), INC.), CREDIT
   SUISSE FIRST BOSTON LLC (N/K/A CREDIT
   SUISSE SECURITIES (USA) LLC) AND
   PERSHING LLC (F/K/A DONALDSON,
   LUFKIN & JENRETTE SECURITIES CORP.)

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 27, 2012, a copy of the foregoing instrument was served on the attorneys of record for all parties to the above cause through the CM/ECF System.

/s/ Odean L. Volker
_____
Odean L. Volker