**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated, | Civil Action No. H-01-3624 (Consolidated) |
| Plaintiffs, | |
| v. | |
| ENRON CORP., et al., | |
| Defendants. | |
| This Document Relates to: | |
| SILVERCREEK MANAGEMENT, INC., et al., | Civil Action No. H-03-0815 (Coordinated) |
| Plaintiffs, | |
| v. | |
| CITIGROUP, INC., et al., | |
| Defendants. | |

**DEUTSCHE BANK'S REPLY MEMORANDUM IN FURTHER**
**SUPPORT OF DEUTSCHE BANK'S MOTION TO DISMISS**
**PLAINTIFFS' THIRD AMENDED COMPLAINT (DOCKET NO. 121)**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..................................................................................................................................2

I.   THE TAC IS DEVOID OF ANY FACTS THAT SHOW ACTUAL KNOWLEDGE
     AT EITHER DEUTSCHE BANK DEFENDANT OF A PURPORTED FRAUD ON
     INVESTORS INVOLVING THE TAX TRANSACTIONS......................................................2

II.  THE TAC FAILS TO ALLEGE FACTS THAT COULD ESTABLISH THAT
     ASSISTANCE BY DEUTSCHE BANK IN THE TAX TRANSACTIONS
     PROXIMATELY CAUSED PLAINTIFFS' ASSERTED LOSSES.......................................7

III. THE TAC'S SECTION 11 PLEADING IS A STRING OF UNSUPPORTED
     CONCLUSIONS AND FAILS TO ALLEGE ANY FACTS THAT MIGHT LINK
     DEUTSCHE BANK WITH DISTRIBUTION OF REGISTERED SECURITIES...............10

CONCLUSION.............................................................................................................................15

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

In re Adelphia Comm. Corp. Sec. & Deriv. Litig.,
  No. 03 MD 1529, 2007 U.S. Dist. LEXIS 66911 (S.D.N.Y. Sept. 10, 2007) .......................12, 13

American High-Income Trust v. AlliedSignal,
  329 F. Supp. 2d 534 (S.D.N.Y. 2004)...........................................................................................12

Ashcroft v. Iqbal,
  129 S.Ct. 1937 (2009)...................................................................................................5, 10, 13, 14

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)....................................................................................................................5, 14

Berman v. Morgan Keegan & Co., Inc.,
  No. 10 Civ. 5866, 2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011) .............................................2, 6

Clark v. Cosmo (In re Agape Litig.)
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ...........................................................................................6

In re Enron Corp. Sec. Derivative & "ERISA" Litig.
  310 F. Supp. 2d 819 (S.D.Tex. 2004) ............................................................................................8

In re Enron Corp. Sec., Derivative & "ERISA" Litig.
  761 F. Supp. 2d 504 (S.D.Tex. 2011) .......................................................................................7, 14

First Nationwide Bank v. Gelt Funding Corp.,
  27 F.3d 763 (2d Cir. 1994).............................................................................................................7

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,
  479 F. Supp. 2d 349 (S.D.N.Y. 2007)............................................................................................2

Hightower v. Cohen,
  No. CV 08-3229, 2009 U.S. Dist. LEXIS 130847 (E.D.N.Y. Sept. 30, 2009)..............................3

Hunt v. Enzo Biochem, Inc.,
  471 F. Supp. 2d 390 (S.D.N.Y. 2006)............................................................................................5

J.P. Morgan Chase Bank v. Winnick,
  406 F. Supp. 2d 247 (S.D.N.Y. 2005)............................................................................................6

Kirschner v. Bennett,
  648 F. Supp. 2d 525 (S.D.N.Y. 2009).................................................................................3

Leemon v. Burns,
  175 F. Supp. 2d 551 (S.D.N.Y. 2001).................................................................................5

Lerner v. Fleet Bank, N.A.,
  459 F.3d 273 (2d Cir. 2006)...............................................................................................2

McDaniel v. Bear Stearns & Co., Inc.,
  196 F. Supp. 2d 343 (S.D.N.Y. 2002).................................................................................8

In re Refco, Inc. Sec. Litig.,
  No. 05 Civ. 8626, 2008 U.S.Dist. LEXIS 62543 (S.D.N.Y. Aug. 14, 2008) ......................12, 13

Rosner v. Bank of China,
  349 F. App'x 637 (2d Cir. 2009).....................................................................................5, 6

In re WorldCom, Inc. Sec. Litig.,
  382 F. Supp. 2d 549 (S.D.N.Y. 2005).................................................................................6

## STATUTES

15 U.S.C. § 77k(a) & (a)(5) .............................................................................................12

## PRELIMINARY STATEMENT

In opposing Deutsche Bank's motion to dismiss the Third Amended Complaint ("TAC") (Docket No. 121), Plaintiffs act as if the pleading deficiencies against Deutsche Bank were mere technicalities.  See Plaintiffs' Corrected Memorandum in Opposition to Bank Defendants' Motions to Dismiss ("Pl. Mem.") (Docket No. 142) at 1.[1]  Instead, Plaintiffs have utterly failed to plead facts to support critical elements of each of their claims against the Deutsche Bank defendants:  lacking here are the elements of actual knowledge, substantial assistance, and proximate causation on each aiding and abetting claim, and the elements of an agreement and common objective for conspiracy; also lacking are facts to support the status of a Section 11 underwriter with regard to Plaintiffs' purchases of registered Enron Zero Coupon Notes.  Plaintiffs are attempting to catch Deutsche Bank in their wide fishing net, which has been cast as broadly and indiscriminately as possible, and are relying on the hope that this Court will not rigorously require facts that connect the scattershot pieces of Plaintiffs' purported claims. But key connections are missing here.  Plaintiffs have not provided the facts that are legally necessary to implicate Deutsche Bank in any Enron deception of these investors, and to blame Deutsche Bank for their alleged damages.

No **facts** alleged indicate that anyone at Deutsche Bank had actual knowledge that any of its Tax Transactions with Enron were fraudulent or were being used by the company as a fraud on investors – either at the time when each transaction was entered into, or when Plaintiffs assert they were deceived by Enron in certain note offerings.  No **facts** alleged indicate that Plaintiffs' claimed losses were caused by Enron's use of the Tax Transactions or accounting for

---

[1]     Capitalized and defined terms are used herein consistently with Deutsche Bank's and the Financial Institutions' prior briefing on this motion.  "Deutsche Bank" collectively refers to the two Deutsche Bank defendants in this matter, Deutsche Bank AG and Deutsche Bank Securities Inc. f\k\a Deutsche Bank Alex. Brown Inc.

the Tax Transactions, much less Deutsche Bank's work on those Tax Transactions.  No **facts** alleged indicate that Deutsche Bank and Enron agreed or formed a common objective to deceive investors, by virtue of the Tax Transactions or otherwise.  And no **facts** alleged indicate that Deutsche Bank sold any Zero Coupon Notes under Enron's Registration Statement to these investors or anyone else – as distinct from sales of Rule 144A Zero Coupon Notes as an initial purchaser or sales in the secondary market for private placement notes – or that Deutsche Bank otherwise constituted an underwriter of the registered notes for purposes of imposing Section 11 liability.  The TAC is rife with improper, conclusory pleading.  Plaintiffs' arguments in opposition to Deutsche Bank's motion to dismiss simply repeat or further exaggerate those unfounded conclusions, and cannot overcome the lack of essential facts in Plaintiffs' effort to snare Deutsche Bank.  This reply brief aims to further focus the Court on outcome-determinative examples of the TAC's inadequacy.

## ARGUMENT

### I.     THE TAC IS DEVOID OF ANY FACTS THAT SHOW ACTUAL KNOWLEDGE AT EITHER DEUTSCHE BANK DEFENDANT OF A PURPORTED FRAUD ON INVESTORS INVOLVING THE TAX TRANSACTIONS

Plaintiffs must allege facts showing actual knowledge in the defendant of the underlying asserted wrong for a claim of aiding and abetting to proceed.  The pleading "burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one." Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) (citation omitted).  To satisfy the knowledge element for aiding and abetting fraud, a plaintiff must allege "specific 'facts giving rise to a strong inference of actual knowledge regarding the underlying fraud.'" Berman v. Morgan Keegan & Co., Inc., No. 10 Civ. 5866, 2011 WL 1002683, *9-10 (S.D.N.Y. March 14, 2011) (quoting Lerner v. Fleet Bank, N.A., 459

F.3d 273, 293 (2d Cir. 2006)).  Moreover, a plaintiff's pleading of knowledge, substantial

assistance, and proximate cause against an aider and abettor[2]  must all line up coherently to

implicate the defendant in the actual wrongdoing that allegedly caused plaintiff's asserted harm.

See Kirschner v. Bennett, 648 F. Supp. 2d 525, 545 (S.D.N.Y. 2009) (plaintiff "must offer facts

sufficient to demonstrate that the defendants had actual knowledge" of the wrongful conduct that

harmed plaintiff and "not actual knowledge of different wrongful conduct"); see also Berman,

2011 WL 1002683 at *11 (alleging facts that a securities sale violated an agreement "is distinctly

different from alleging facts indicating that Morgan Keegan knew that [the primary actor] was

committing fraud"); Hightower v. Cohen, No. CV 08-3229, 2009 U.S. Dist. LEXIS 130847, *16

(E.D.N.Y. Sept. 30, 2009) (even with alleged knowledge of one part of a fraud, aiding and

abetting not pled without actual knowledge in the defendant of the larger scheme that caused the

claimed injury).[3]

           In the face of their heavy "actual knowledge" pleading burden, Plaintiffs offer an

extraordinary and wholly conclusory three-page chart in the TAC.  TAC ¶ 363.  The chart

purports to list numerous Deutsche Bank employees "who knew that the Tax Transactions

violated tax laws or GAAP."  Id.  The chart does not convey **any** facts that might show what

Deutsche Bank or its employees knew about any wrongdoing, however, and simply lists each

employee's participation in various transactions.  Likewise, it does not even purport to convey

---

[2]     For a discussion of these required elements, see Memorandum of Law in Support of Defendant Deutsche Bank's Motion to Dismiss Plaintiffs' Third Amended Complaint ("DB Mem.") (Docket No. 135) at 3-6. Deutsche Bank will not repeat here all of the legal standards and arguments previously presented to the Court on its behalf in the Financial Institutions' Joint Memorandum of Law in Support of Their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint ("Joint Mem.") (Docket No. 130) and the DB Mem.  In addition, Deutsche Bank joins the Financial Institutions' Joint Reply Memorandum of Law in Support of Their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint ("Joint Reply"), which is also being served and filed today.

[3]     Thus, Plaintiffs are not helped by their attempt to grasp for purported knowledge at Deutsche Bank of some wrongdoing separate from any Enron activity with which Deutsche Bank allegedly assisted.  See Pl. Mem. at 61-62.

**any** facts that might indicate knowledge at Deutsche Bank of any Enron use of the Tax Transactions to commit fraud on any investors.  All of Plaintiffs' assertions against Deutsche Bank are premised on Plaintiffs' or other observers' long after-the-fact conclusions that the Tax Transactions purportedly violated the tax laws, or that Enron's accounting for them violated GAAP, or that Enron used its accounting to deceive investors – not based on any facts about actual knowledge at Deutsche Bank at the relevant time of fraud on investors that was somehow connected with these transactions.

Indeed, Plaintiffs do not and cannot provide any specifics in this TAC dated August 11, 2011, about anyone at Deutsche Bank believing at the relevant time that the Tax Transactions were a part of any fraud, because the full discovery that Plaintiffs have been afforded shows just the opposite.  The record in this MDL reflects that Deutsche Bank's employees, Enron's employees, and various legal advisors all took steps to ensure – and in fact believed – that the Tax Transactions complied with governing tax law.  Deutsche Bank was not privy to Enron's accounting decisions, but again, well-regarded law firms and accounting firms vetted Enron's accounting at the time.  In addition, Enron's post-bankruptcy management continued to defend the legitimacy of the Tax Transactions in proceedings before the Internal Revenue Service ("IRS") and succeeded in doing so, with one exception connected to the Tomas transaction, see TAC ¶ 417 (alleging a years after-the-fact IRS conclusion about a "purpose of tax avoidance" in Tomas).  Deutsche Bank highlights how different the actual factual record is from Plaintiffs' summary conclusions in the TAC not to bring record evidence into this motion to dismiss, but to emphasize **why** mere conclusions of knowledge are insufficient and improper. There are a whole spectrum of real possibilities here that all fall well short of actual knowledge of fraud, and Plaintiffs cannot simply assume this required element of aiding liability is met

4

without advancing well-pleaded facts that show knowledge in the relevant defendant.  Cf. TAC ¶¶ 470, 473 (conclusory allegations).[4]  "[A] formulaic recitation of the elements of a cause of action will not do," and courts should not credit bald assertions and unwarranted inferences on a motion to dismiss.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-51 (2009).

Here, the Examiner's post-bankruptcy opinion that Enron's accounting did not comply with GAAP says nothing about actual knowledge at Deutsche Bank, at the time of the Tax Transactions or before Enron's failure, that the Tax Transactions were being used for fraud. Cf. TAC ¶¶ 382, 399, 431.  Similarly, a purpose to generate accounting income or to reduce taxes at Enron does not equal a purpose to commit fraud, much less a fraudulent purpose that anyone at Deutsche Bank knew.  Sophisticated attempts to use tax law to a company's (or an individual's) advantage occur every day, and are by themselves many steps short of fraud. Moreover, companies or individuals can make a mistake or misinterpretation in their assessment of tax law or accounting rules that becomes apparent after the fact, but was not known and intentionally ignored at the relevant time.  In this case, Plaintiffs themselves portray Enron's approach to the Tax Transactions as "questionable," "risky," or "aggressive." TAC ¶¶ 367, 390, 408.  Such characterizations do not identify fraud, much less fraud known to Deutsche Bank.  Cf.

---

[4]    Plaintiffs do not even attempt to differentiate between Deutsche Bank AG and Deutsche Bank Securities Inc., the two Deutsche Bank defendants.  But the burden is on them at the pleading stage, particularly after full discovery and three attempts at amendment, to plead facts supporting each element of their claims against each named defendant.  See Hunt v. Enzo Biochem, Inc., 471 F. Supp. 2d 390, 400 (S.D.N.Y. 2006) (under Rule 9(b), a "complaint may not simply clump defendants together"); Leemon v. Burns, 175 F. Supp. 2d 551, 556 (S.D.N.Y. 2001) (a fraud-related complaint against multiple defendants must provide sufficient allegations that are "specifically attributable to each individual defendant").  In addition to improperly lumping the two Deutsche Bank defendants together throughout the TAC and their briefing, Plaintiffs erroneously attempt to ascribe the conduct of a separate entity that is not a defendant, BT Investment Partners, to these defendants.  See TAC ¶¶ 436-38.

Rosner v. Bank of China, 349 F. App'x 637, 638-39 (2d Cir. 2009) (a questionable or suspicious transaction is not sufficient to show actual knowledge of fraud).[5]

       With their myriad alleged facts **unrelated** to Deutsche Bank's actual knowledge, Plaintiffs seem to be attempting to create the impression that Deutsche Bank "should have known" that Enron was committing a fraud on investors through its accounting for the Tax Transactions. But it is well-established that constructive knowledge, or what a defendant should have known, is not enough for the knowledge element of aiding and abetting under New York law. Rosner, 349 F. App'x at 639-40; Berman, 2011 WL 1002683 at *10. The required state-of-mind threshold scales upward when activity is steps removed from a primary fraud; an aider's culpability depends upon knowing of the precise fraud he is charged with aiding. See supra at 3-4. Neither recklessness on the part of the alleged aider nor a purported motive for fraud are sufficient. See In re WorldCom, Inc. Sec. Litig., 382 F. Supp. 2d 549, 560-61 (S.D.N.Y. 2005) (rejecting recklessness as a basis for aiding and abetting liability); J.P. Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 252-53 & n.4 (S.D.N.Y. 2005) (holding that the requirements for pleading the knowledge element of aiding and abetting fraud are different from and more stringent than pleading a strong inference of fraud in an alleged primary actor).[6]

       In the TAC, Plaintiffs fail to allege facts that indicate any actual knowledge at Deutsche Bank of fraud on investors by Enron's use of its Tax Transactions, and for that reason

---

[5]    Plaintiffs, without citation to the TAC or otherwise, argue in their brief that here "Deutsche Bank was a party to transactions it admits had no legitimate business purpose." Pl. Mem. at 66. Plaintiffs offer no facts to substantiate that bald assertion. Likewise, Plaintiffs in their brief – again without citation – attempt to invoke completely distinct tax shelter issues that have nothing to do with Enron or Plaintiffs' alleged losses. Id. That a defendant may have acted improperly in another matter does not assist in showing that it knew of fraud by Enron and aided in it. See Clark v. Cosmo (In re Agape Litig.), 773 F. Supp. 2d 298, 309 (E.D.N.Y. 2011). Plaintiffs are revealing their lack of factual support for the claims in this case by veering so far afield.

[6]    Plaintiffs have not alleged any facts in the TAC that might show that either Deutsche Bank defendant "made certain decisions specifically to avoid attributable knowledge of" an underlying fraud by Enron, and thus they cannot invoke the concept of "conscious avoidance." Clark v. Cosmo, 773 F. Supp. 2d 309.

alone the aiding and abetting fraud cause of action must be dismissed.  This case presents the same deficient and conclusory pleading of actual knowledge at Deutsche Bank that the Court rejected in Westboro.  See In re Enron Corp. Sec., Derivative & "ERISA" Litig. ("Westboro Props. I"), 761 F. Supp. 2d 504, 539-40, 579 (S.D. Tex. 2011).[7]  With the lack of any well-pleaded knowledge of fraud at Deutsche Bank, moreover, Plaintiffs in the TAC also fail to adequately allege that Deutsche Bank had a meeting of the minds or common objective with Enron to commit that fraud.  See Westboro Props. I, 761 F. Supp. 2d at 579.  On the largely tangential facts offered by the TAC, Deutsche Bank neither aided and abetted nor conspired with Enron to commit fraud on Plaintiffs.

## II.   THE TAC FAILS TO ALLEGE FACTS THAT COULD ESTABLISH THAT ASSISTANCE BY DEUTSCHE BANK IN THE TAX TRANSACTIONS PROXIMATELY CAUSED PLAINTIFFS' ASSERTED LOSSES

The aiding and abetting fraud allegations also fail for a second reason.  Plaintiffs have not pled facts that show that Deutsche Bank provided any substantial assistance to Enron in any way that proximately caused Plaintiffs' alleged losses.  While Plaintiffs admit that "[t]he element of 'substantial assistance' is akin to proximate cause," they proceed to oppose this motion as if this element were satisfied by the mere possibility or foreseeability that a defendant's assistance could have, in some hypothetical fact scenario, caused losses to investors.  Pl. Mem. at 100-101.  Instead, proximate cause requires alleged facts that show defendants' actions **did** actually cause these investors' alleged damages.  See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) (plaintiff's "claims fail because it has not

---

[7]     As with the Tax Transactions, which are the centerpiece of Plaintiffs' asserted allegations against Deutsche Bank, Plaintiffs fail to allege facts in the TAC that indicate any actual knowledge at Deutsche Bank of fraud on investors in connection with the share trust transactions or in connection with LJM2.  See Westboro Props. I, 761 F. Supp. 2d at 540, 579.  In addition, Plaintiffs have not alleged facts to show – and cannot possibly show – that Deutsche Bank's assistance to Enron in raising capital for the share trusts caused Plaintiffs any harm.

adequately plead facts which, if proven, would show that its loss was caused by" the alleged

transactions "as opposed to intervening events").  Plaintiffs' own case citation describes this

causation element as requiring that the asserted aider's conduct was "a substantial factor in the

sequence of responsible causation," as well as direct and foreseeable enough to be considered a

proximate cause.  McDaniel v. Bear Stearns & Co., Inc., 196 F. Supp. 2d 343, 359 (S.D.N.Y.

2002); see also Pl. Mem. at 100.  Both aspects of the proper analysis of proximate causation are

missing in the TAC as to Deutsche Bank.

        First, the TAC alleges no facts – as opposed to bare conclusions – that might show

that Enron's Tax Transactions played any role in Enron entering bankruptcy and in low

recoveries after bankruptcy for Silvercreek on its Enron debt.  The Tax Transactions have never

been the subject of any Enron accounting restatements or after-the-fact disclosures about Enron's

past deception, in the fall of 2001 or otherwise.  The Tax Transactions were markedly different

from the hidden debt and business failures that plunged Enron into insolvency.  As this Court

knows from prior MDL matters, moreover, the Tax Transactions were not even discussed

publicly in commentary on Enron until May 2002.  In re Enron Corp. Sec. Derivative &

"ERISA" Litig. (Newby), 310 F. Supp. 2d 819, 838 & n.27 (S.D. Tex. 2004).  The bankruptcy

examiner offered his opinions about those transactions later in 2002.  But as the TAC reveals,

Silvercreek had sold all of its Zero Coupon Notes by January 2002.  TAC, Ex. A.  In addition,

Silvercreek had sold most of its 7% Exchangeable Notes by that date as well, and for those few

Exchangeable Notes that were sold after mid-2002, the price that Silvercreek received actually

rose from levels earlier in 2002; thus, as information about the Tax Transactions entered the

marketplace, that information had no negative effect on recoveries for Silvercreek.  TAC, Ex. A.

These Plaintiffs have not bothered to try to plead facts showing actual causation of their damages

by Deutsche Bank, because they appear to be attempting to blame any and all large counterparties with Enron.  Aiding and abetting liability, however, cannot simply rest on guilt by business association, where Plaintiffs have not shown that the transactions they point to actually played a role in their harm.

Second, even if Plaintiffs had alleged some chain of actual causation (which they have not), Plaintiffs also lack facts sufficient to show that Deutsche Bank could have reasonably foreseen any material fraudulent misstatements to investors by Enron, if there were any, regarding the Tax Transactions.  At most, Plaintiffs' case against Deutsche Bank presents "but for" causation, which is legally insufficient.  As discussed above, there is no indication that anyone at Deutsche Bank thought at the time of the Tax Transactions or at any time before Enron's bankruptcy that those transactions failed to comply with governing tax law and thus that Enron might have accounted for, much less disclosed, their effects improperly.  Given that Deutsche Bank presented these transactions to its primary banking regulator **before** it ever engaged in them, and given all the care that had been taken at the time of the transactions to comply with tax law and secure expert opinions that the transactions should be upheld upon any IRS review, see, e.g., TAC ¶¶ 365, 394, 426, Deutsche Bank certainly did not have a basis for believing that **fraud** was foreseeable, or even that negligent misrepresentation might occur.  In any event, the tax,  accounting, and disclosure decisions made by Enron were made by the company and its tax, accounting, and legal advisors.  Deutsche Bank is too far removed from the alleged fraud, both in steps necessary to accomplish that fraud and in lack of any knowledge that deception was occurring, to be held to have directly and foreseeably contributed to the harms that Plaintiffs allege.

9

III.   **THE TAC'S SECTION 11 PLEADING IS A STRING OF UNSUPPORTED CONCLUSIONS AND FAILS TO ALLEGE ANY FACTS THAT MIGHT LINK DEUTSCHE BANK WITH DISTRIBUTION OF REGISTERED SECURITIES**

For all the reasons articulated in the Financial Institutions' joint briefs, Plaintiffs' fraud-based Section 11 claim must satisfy the particularized pleading requirements of Rule 9(b). Joint Mem. at 38-39; Joint Reply at 28-31.  The Section 11 claim against Deutsche Bank cannot possibly do so, because it does not even offer sufficient well-pleaded facts to satisfy Rule 8(a). Any pleading that merely offers labels or conclusions, or "naked assertions devoid of further factual enhancement," does not suffice and must be dismissed.  Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).  Likewise, a complaint that pleads facts that are "merely consistent with a defendant's liability" is not enough.  Id.  Plaintiffs at a minimum must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plaintiffs' attempt at pleading a Section 11 cause of action against Deutsche Bank fails these tests, for it is dependent upon conclusions that rest solely on conjecture and surmise – not on any alleged facts about Deutsche Bank's activities.  At this stage of the proceedings, this failure is fatal to Plaintiffs' case.

In the TAC, Plaintiffs speculatively extrapolate some Deutsche Bank liability to them under Section 11 as an "underwriter" for the public offering of registered Zero Coupon Notes from (a) Deutsche Bank's role – completed months earlier – in an unregistered offering of Zero Coupon Notes to institutional investors and (b) certain partial quotations from the Zero Coupon Note Registration Statement.  TAC ¶¶ 143-153.  In doing so, Plaintiffs impermissibly lump Deutsche Bank together with other bank defendants in conclusory and broad-brush allegations, and fail to offer any facts about Deutsche Bank that might support Section 11 liability.  See TAC ¶¶ 144, 146, 152-153.

10

The most critical fact that Plaintiffs refuse to acknowledge, but that is apparent from the Registration Statement upon which they rely, and that shows the lack of factual basis for their Section 11 claim against Deutsche Bank as an "underwriter" of the registered notes is this:  The Zero Coupon Notes sold under Rule 144A or another exemption from registration in the original private placement of the notes could either be held by their owners (and not distributed) or could continue to be sold pursuant to an exemption from registration (**i.e., not under the Registration Statement**), even after the Registration Statement went into effect.[8] There is no factual basis here for simply assuming, as Plaintiffs do, that Deutsche Bank sold any Zero Coupon Notes under the Registration Statement.  There is not even any factual basis for believing that Deutsche Bank owned any notes as of the actual effective date of the Registration Statement.  See supra note 8.  Indeed, Plaintiffs have not even offered any facts to support their assumption that Deutsche Bank actually received or retained any Zero Coupon Notes from the issuer in the private placement, which was over-subscribed.  The little background information

---

[8]     The Registration Statement's "Plan of Distribution" makes clear that any Zero Coupon Notes "that qualify for sale pursuant to Rule 144, Rule 144A or any other available exemption from registration under the Securities Act may be sold under Rule 144, Rule 144A or such other available exemption."  Registration Statement, attached as Exhibit 1 to Decl. of Odean Volker dated Sept. 27, 2011 (Docket No. 133-1), at 46. In addition to erroneously treating the initial private placement of the securities as part of the same transaction as the later registration and public sale of the securities, Plaintiffs' incorrect "integration" argument acts as if the effective date of the Registration Statement eliminated the private-market Zero Coupon Notes, when that Registration Statement itself makes clear that the contrary is true.  This case does not involve an exchange offering whereby the registered securities necessarily replace any private-market securities already in existence, and a private market no longer exists.

In addition, the Plan of Distribution makes clear that current holders of Zero Coupon Notes do not necessarily have to sell at all.  The precise wording, which Plaintiffs misleadingly summarize, states that "The selling securityholders intend to distribute the notes and the shares of our common stock issuable upon conversion of the notes **from time to time only as follows (if at all)** …."  Id.  The discussion that follows includes the option, quoted above, of selling under Rule 144 or other exemptions and **not** under the Registration Statement.  In the preceding section, the Registration Statement also emphasizes that "The selling securityholders listed in the above table may have sold or transferred, in transactions exempt from the registration requirements of the Securities Act, some or all of their notes or shares of our common stock since the date on which the information in the above table was provided to us.  Information about selling securityholders may change over time."  Id. at 45.  In other words, mere identification as a "selling securityholder" does not even mean that one owns securities, much less that one has sold or will sell them in the registered offering.

that Plaintiffs have alleged, or that is available in the Registration Statement, is consistent with (i) a successful and complete distribution of the private placement securities in the primary private market, followed by (ii) Deutsche Bank's purchasing Zero Coupon Notes in the secondary private market and then (iii) either holding those notes, or selling them through similar private transactions, either as is or in a re-packaged form of exempt securities – all separate from and not a part of any distribution to any public investors under the Registration Statement.

Plaintiffs' extrapolations are not sufficient to state a plausible claim of Section 11 liability against Deutsche Bank.  Section 11 liability is limited to underwriters who participate in the distribution to the investing public of the securities sold pursuant to a registration statement. See 15 U.S.C. § 77k(a) & (a)(5); In re Adelphia Comm. Corp. Sec. & Deriv. Litig., No. 03 MD 1529, 2007 U.S. Dist. LEXIS 66911, *25-26 (S.D.N.Y. Sept. 10, 2007) (Section 11 "plaintiffs must plead that the defendant 'participated in the transmission process between the issuer and the public'"); see also In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626, 2008 U.S. Dist. LEXIS 62543, *14 (S.D.N.Y. Aug. 14, 2008) (Congressional intent in defining underwriter was to cover those who operated '"as conduits for the transfer of securities to the public'") (citation omitted).[9]  At a minimum, Plaintiffs' claim against Deutsche Bank fails because Plaintiffs have not alleged any facts that indicate that Deutsche Bank sold registered Zero Coupon Notes to any public

---

[9]     The proper application of Section 11in situations like this one – to prior owners of a security who bought it as a security exempt from registration and then later had the potential to sell under a registration statement – requires that the owner sell the security **to the plaintiff** pursuant to the registration statement to be held liable as an underwriter.  See American High-Income Trust v. AlliedSignal, 329 F. Supp. 2d 534, 542 (S.D.N.Y. 2004) (dismissing complaint where there was no allegation "that any Plaintiff purchased registered Bonds from NationsBanc or Prudential," the defendants).  That is because such a seller participates as an "underwriter" only in the distribution of the registered securities actually sold by it to the public, and does not fit the definition of "underwriter" for sales by others.  It is telling in this regard that Plaintiffs do not claim that all of the 89 different listed "selling securityholders" identified in the Prospectus and its four supplements are jointly and severally liable to them.  Plaintiffs have picked the "deep pockets" of financial institutions that participated in the private offering to sue, but that separate private offering is irrelevant to the issues under Section 11.  The Court here, however, need not reach whether sale to the specific plaintiff before the Court is necessary, because Silvercreek has not alleged any facts that show that Deutsche Bank sold under the Registration Statement to anyone.

purchasers.  Plaintiffs' bald assertion in one paragraph of the TAC that each of the investment

banks who served as initial purchasers under the  private note offering held and later "resold

[notes] in the stage two public offering, once the registration statement for these Notes had

become effective," TAC ¶ 149, is a mere "legal conclusion couched as a factual allegation" that

this Court should not credit.  Iqbal, 129 S. Ct. at 1950 (citation and internal quotation marks

omitted); Adelphia, 2007 U.S. Dist. LEXIS 66911 at *26-27 (rejecting "bare pleading" that

banks participated in the distribution of registered securities).[10]  Neither do any facts alleged in

the Complaint support Plaintiffs' recital, in an attempt to set forth the elements of a Section 11

cause of action, that Deutsche Bank "solicited, offered and sold the Zero Notes to the investing

public pursuant to the registration statement."  TAC ¶ 885.[11]  "[M]ere conclusory statements[] do

not suffice" to plead such an essential factual predicate of Section 11 liability.  Id.[12]  In addition,

if Plaintiffs knew any facts that truly implicated Deutsche Bank under Section 11, they plainly

would have alleged those facts at this point – after full discovery and in a third attempt at

---

[10]     Likewise, Plaintiffs try to rely on the naked assertion that all of the various bank defendants "purchased the Zero Notes with a view to the distribution of [the registered securities] and were underwriters of this [registered] offering." TAC ¶ 153. But Plaintiffs have alleged no facts with regard to Deutsche Bank that support that conclusion.  Merely being listed as a "selling securityholder" who **may** from time to time (if at all) sell pursuant to the Registration Statement does not establish any such sales or distribution.  See supra note 7. Too, a fact-specific inquiry is necessary before any seller **may be deemed to be an underwriter under Section 11.**" Cf. TAC ¶ 153.  The necessary facts about anything Deutsche Bank actually did are missing here.

[11]     In their opposition brief, Plaintiffs go so far as to imply that each of the defendants "promptly sold" registered notes to the public after the Registration Statement became effective. Pl. Mem. at 146.  But Plaintiffs have pled no facts about any sales of Zero Coupon Notes after the Registration Statement became effective by Deutsche Bank, much less prompt sales to the public.

[12]     Similarly, Plaintiffs have broadly alleged that "initial underwriters [sic] and any resellers in the subsequent public offering were given the right to participate in the preparation of the registration statement," TAC ¶ 146, but have pled no facts about any actual involvement of Deutsche Bank in the preparation of that Registration Statement. Here, Plaintiffs repeatedly allide abstract possibilities – among many different possibilities – with actual facts, when the latter are what is required.  Moreover, even had it occurred, commenting on a draft registration statement is not sufficient to show that a defendant participated in the distribution of registered securities and thus served as an underwriter.  See Refco, 2008 U.S. Dist. LEXIS 62543 at *6, *13 (definition of underwriter does not  "include the 144A Defendants' merely commenting on a draft of a registration statement for a bond offering in which they took no part in the distribution of the bonds" to the public).

amending their complaint.  Instead, Plaintiffs indiscriminately make assumptions about a group of banks, and leave the claim inadequately pled.  Plaintiffs' threadbare and speculative allegations are especially inadequate given the long procedural history of this case.

Plaintiffs' efforts to distinguish principles articulated in the prior case law, and to cabin those principles to so-called "Exxon Capital" transactions, are unsuccessful.  Plaintiffs' own argument emphasizes the importance of selling "a registered security" or placing such registered securities "into the hands of the investing public."  Pl. Mem. at 144, 149.  But Plaintiffs have not alleged facts that plausibly establish that Deutsche Bank sold registered securities to any member of the public, or otherwise participated in registered sales of the Zero Coupon Notes.  Deutsche Bank is not asserting any "blanket rule" or exemption from potential Section 11 liability in circumstances where a public offering follows an earlier private placement, cf. Pl. Mem. at 149, but rather is arguing that Plaintiffs cannot make blanket assumptions in such cases and must support their claims with facts – particularly where the Registration Statement itself expressly contemplates circumstances under which a holder of the privately-placed securities, though listed as a potential "selling securityholder," might no longer own those securities at the time they are registered or might have no role in registered sales.

\* \* \*

In this case, Plaintiffs have persisted in filing factually inadequate allegations years after the Supreme Court refined federal pleading standards and emphasized that real factual content that shows plausible – not merely possible – liability is required.[13]  On all of the pleading failures argued above, Deutsche Bank respectfully requests that the Court carefully examine the

---

[13]     Thus, Plaintiffs here cannot persuasively rely on rulings from 2002 and 2003, Pl. Mem. at 143, which come not only after full discovery in this casebut after the Supreme Court's guidance in Twombly and Iqbal, to sustain their conclusory allegations against Deutsche Bank.  See Westboro Props. I, 761 F. Supp. 2d at 546 n.40.

TAC in light of current pleading standards and that it dismiss Plaintiffs' factually-unfounded

claims against Deutsche Bank.

<u>**CONCLUSION**</u>

For all the reasons stated above, and in the DB Mem., Joint Mem., and Joint

Reply, each and every count that Plaintiffs' TAC attempts to plead against the Deutsche Bank

defendants should be dismissed with prejudice.

Dated: January 27, 2012
        Houston, Texas

Respectfully submitted,

By:   /s/   Eric  D. Wade
        Eric D. Wade
        State Bar No. 00794902
        Daniel K. Hedges
        State Bar No. 09369500
        PORTER HEDGES LLP
        1000 Main Street, 36th Floor
        Houston, Texas 77002
        Telephone: (713) 226-6000
        Facsimile: (713) 226-6255

        OF COUNSEL:

        Lance Croffoot-Suede
        Ruth E. Harlow
        Kimberly A. Evans
        LINKLATERS LLP
        1345 Avenue of the Americas
        New York, New York 10105
        Telephone: (212) 903-9000
        Facsimile: (212) 903-9100

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 27th day of January, 2012, a true and correct copy of the foregoing was served on all counsel of record through the Southern District of Texas CM/ECF electronic filing system.

<u>/s/ Eric D. Wade</u>
Eric D. Wade